Katherine BOUCHARD, et al., Plaintiffs,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Lillian PINNEX, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Civ. A. Nos. 78–0632–F, 80–0319–F.

United States District Court,
D. Massachusetts.

April 2, 1984.

Mary Ellen McCarthy, Western Mass Legal Services Inc., Holyoke, Mass., for Katherine Bouchard, Midas Turgeon, George Stephens, Adolph DeDeurwaerder, John Svoboda, Lottie Sypulski and Carolyn Barry.

Joseph J. McGovern, Boston, Mass., for defendant.

## MEMORANDUM

FREEDMAN, District Judge:

## I. INTRODUCTION

The plaintiffs, in two cases [1] consolidated for a hearing, challenge the methods used by the Secretary to compute the optional state supplementary payment distributed under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, when income is "deemed" from an ineligible spouse to a categorically eligible [2] individual. The plaintiffs to the class action seek an order reversing the final decision of the Secretary in each of their administrative appeals and a similar order running to the entire class. They also seek declaratory and injunctive relief. For the reasons stated herein, the Court concludes the Secretary incorrectly calculated the amount of the state optional supplementary payment due the plaintiffs and the class which they represent. Accordingly, the motion of the plaintiff class for summary judgment must be granted on the merits of the action and on the requests for prospective declaratory and injunctive relief. However, the prayer for an order to remand all applications to the Secretary for recalculation in accordance with this Memorandum must be denied in part.

## II. FACTS

The relevant facts of this case are undisputed. The plaintiffs are all categorically eligible for SSI benefits on the basis of age, blindness or disability. They have all, for various periods of time, lived in the

---

1. *Bouchard, et al. v. Secretary of Health and Human Services,* C.A. No. 78-0632-F, combined the administrative appeals of seven named plaintiffs. The action was subsequently certified as a class by Order of the Court. *Pinnex v. Secretary of Health and Human Service,* C.A. No. 80-0319-F, seeks review of a final decision of the Secretary, 42 U.S.C. § 405(g) and was consolidated with the class action because Pin-nex qualified for class membership and her review claims legal grounds identical to those raised by the class.

2. Persons are "categorically" eligible for Supplemental Security Income if they are aged (over sixty-five years of age), blind or disabled. 42 U.S.C. §§ 1381 *et seq.*

same household with a spouse who did not meet the standards for categorical eligibility of the SSI program. Each had spousal income deemed to them for purposes of determining plaintiffs' financial eligibility for SSI and the amount of benefits. 42 U.S.C. § 1382c(f)(1). Plaintiffs are either ineligible for or receive a smaller state supplementary benefit than they would if their state benefits were calculated in the same manner as is done for purposes of computing their federal benefits.

The eight named plaintiffs all filed timely appeals alleging that the Social Security Administration ("SSA") had improperly calculated the Massachusetts optional state supplement. Because of the similarity of the cases in light of the issue presented, it is unnecessary to recount the details of all the consolidated actions; however, for purposes of illustration, I will set forth the factual and procedural background of two of the plaintiffs represented today.

Katherine Bouchard resides in Pittsfield, Massachusetts. She is categorically eligible for SSI on the basis of disability. Between March 1977 and July 1979, she resided in the same household with her spouse, who was not eligible for SSI. His income was deemed to be available to her in order to determine financial eligibility for SSI. On July 2, 1979, her spouse became eligible for SSI, and she was no longer subject to the provision of the Act. Her administrative appeal was denied by an Administrative Law Judge ("ALJ"). On January 18, 1978, the Appeals Council denied her request for review thereby affirming the ALJ's decision as the final decision of the Secretary.

Plaintiff John Svoboda resides in Northampton, Massachusetts. He is categorically eligible for SSI on the basis of age. Between April 1978 and May 1980, he resided in the same household with his ineligible spouse, whose income was deemed to be available to plaintiff. On May 1980, his spouse became eligible for SSI, and he was no longer subject to the provision of the Act. Svoboda was denied benefits but following a timely appeal, an ALJ entered a decision in his favor. Tr. at 148. The Appeals Council then ruled, in a consolidated case,[3] that the method used by the SSA in determining the amount of optional state supplementary benefits payable fully complied with the requirements of the Social Security Act and the implementing regulations.

In sum, therefore, plaintiffs are all eligible for SSI on the basis of age, blindness or disability. All are or have been sharing a household with a spouse who is or was ineligible for SSI benefits. All have been denied benefits, received a reduced amount, or were terminated from coverage under the SSI program. All have timely appealed the rulings through the Appeals Council and received adverse rulings. All are therefore now final decisions of the Secretary, subject to judicial review. 42 U.S.C. § 1383.

On January 11, 1982, the Court certified a class of plaintiffs consisting of all Massachusetts residents who:

1) Have applied to the Secretary for or have received SSI benefits and have been found categorically eligible for SSI benefits;

2) Have resided in the same household with an ineligible spouse whose income is subject to the statutory deeming requirements set out in 42 U.S.C. § 1382c(f)(1);

3) Have Countable Income below the Massachusetts SSI standard for an eligible individual; and

4) Have Countable Income, together with Countable Income of their ineligible spouses, lower than the Massachusetts SSI standard for an eligible couple.

---

**3.** Plaintiff Svoboda's case was consolidated with the applications of plaintiffs Turgeon, Stephens and DeDeurwaerder. Other named plaintiffs in this case are Sypulski, whose application was approved by the ALJ but overruled by the Appeals Council, and plaintiff Barry, whose application was denied at all levels. Plaintiff Pinnex's appeal was consolidated with this case after the class was certified.

The named plaintiffs, therefore, adequately represent the interests of the class of persons similarly situated.

### III. THE SUPPLEMENTAL SECURITY PROGRAM

Supplemental Security Income, Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, is a federal program of monthly payments to aged, blind or disabled persons who have little or no income and resources. The SSI program was passed on October 30, 1972 and became effective on January 1, 1974. P.L. 92–603. The program replaced the previous state administered Social Security Act income maintenance programs of Aid to the Permanently and Totally Disabled ("APTD"), Old Age Assistance ("OAA"), and Aid to the Blind ("AB"). *Id.*, Title III, § 303(a), Oct. 30, 1972; 86 Stat. 1484, repealing Titles I, X and XVI of the Social Security Act.

Under the previous programs, each state had been free to determine both the level of need and the level of benefits due to applicants. This freedom, plus the fact that each state administered its own program, led to considerable variation among the states as to financial eligibility and degree of disability or blindness required in order to qualify for assistance. Title XVI was enacted, in part, to remedy these variations in eligibility requirements. The federal benefit payment level was to provide a nationally uniform minimum benefit.

The legislature recognized that this national minimum would be higher than the benefit level provided under the old program in some states, but lower than the benefit level which had been in place in other states. Congress therefore authorized states to supplement the federal payment to reflect the varying costs of living among the several states. 42 U.S.C. § 1382e.[4] States who elected to offer this optional state supplementary payment were permitted to administer the distribution of the payment separately or enter into an agreement with the federal government under which the Secretary would make supplementary payments on behalf of the state. 42 U.S.C. § 1382e(a). These payments would be subject to any rules, regulations and provisions which the Secretary found necessary to achieve the efficient and effective administration of both programs. 42 U.S.C. § 1382e(b)(2).[5] The Secretary's regulations pertinent to state supplementary payments are set forth in 20 C.F.R., Subpart T §§ 416.2001 *et seq.* The federal government, therefore, assumed complete control of the administration of optional supplementary payments offered by states who entered into appropriate federal-state agreements. 42 U.S.C. § 1382e(a).

Congress wished to encourage the administration of state supplementary payments by the federal government. Uniform administration would "avoid unnecessary duplication of administrative costs, would permit the states to take advantage of the improved methods and procedures ... and would tend to foster national uniformity in the operation of assistance programs." H.Rep.P.L. 92–603, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News, 4989, 5185. Federal-state agreements, therefore, were made attractive by incorporating several provisions into the statutory scheme.

First, the amount of the optional state supplement was specifically excluded from the definition of income for the purpose of computing eligibility and amount of federal benefit payment. 42 U.S.C. § 1382e(a). Secondly, the federal government assumed the entire financial burden of administrating the distribution of federal and state payments, requiring states to reimburse the government only the amount actually

---

4. The legislation also includes a "grandfather" provision to guarantee recipients under the old programs that their benefits would not be reduced. P.L. 93–66 § 212, notes following 42 U.S.C. § 1382. This so-called "mandatory" supplement is not at issue in this case.

5. States can, however, set residency requirements and may disregard additional amounts of income. 42 U.S.C. § 1382e(c).

distributed in the form of payments to needy individuals. 42 U.S.C. § 1382e(d). Finally, the government agreed to a "hold harmless" provision. Congress recognized that:

[b]y entering into agreements for federal administration of their supplemental payments, states will be losing all administrative control over the operation of those benefits. It must be recognized, however, that states may not fully share this confidence and also that patterns of state-to-state migration could result in increased caseloads for a given state even if national caseloads remain stable or decrease.... [The statute], therefore, includes a "hold harmless" provision designed to assure the states that their welfare expenditures will not be increased because of the effects of the provisions of this bill....

H.Rep.P.L. 92–603, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News, 4989, 5186–5187.

The "hold harmless" provision, P.L. 92–603 § 401(a)(1), provided that if the annual aggregate amount of optional payments exceeded the state's total outlay under its old programs for calendar year 1972, that excess amount would be paid by the federal government. To prevent states from setting high levels for optional payments and then merely passing on the cost to the federal government, a state could receive hold harmless "credit" only for that portion of the optional supplement which exceeds the "Annual Payment Level," that is, the highest amount an individual would have received in January of 1972. The federal "hold harmless" provision, therefore, had both "a ceiling and a floor." *Irizarry v. Weinberger*, 381 F.Supp. 1146, 1149–50 (S.D.N.Y.1974).

Massachusetts elected to provide an optional state supplementary payment, and to have the payment administered by the federal government. M.G.L. c. 118A, §§ 1 and 3. Accordingly, the Commonwealth en-

tered into a requisite Federal-State Agreement, Tr. at 484, and qualified for hold harmless protection. Social Security Report at 1 (1981). In accordance with the statute, Massachusetts agreed to provide state supplementary benefits to all individuals residing in the state who receive, or who would but for their income receive federal benefits. 42 U.S.C. § 1382e(b). Further, in accordance with federal regulations, 42 C.F.R. § 416.2020(d), Massachusetts designated nine payment levels. Three categories designate payments to individuals who are aged, blind or disabled, and three other categories designate payments for couples in which both are aged, both are blind, or both are disabled. 42 C.F.R. § 416.2020(d)(2). In addition, Massachusetts assigned three additional "couple categories" in which both members of the couple were categorically eligible.[6] These nine designations are the maximum number of categories allowed under federal-state agreements. 42 C.F.R. § 416.-2020(d).

Federal regulations further allow a state to elect a maximum of five variations, called "living arrangements" in recognition of the different needs which result from various lifestyles. These variations could include arrangements such as living alone, living with an ineligible spouse, or congregate care. 20 C.F.R. § 2030(a)(1). Massachusetts has designated four types of living arrangements. An eligible individual, whether living alone or with an ineligible spouse or child, *or with an eligible spouse,* is assigned to Living Arrangement A, Full Cost of Living, so long as the applicant does not reside in a group care facility, commercial boarding house, halfway house, or rest home. Agreement, Tr. at 533. All other living arrangements provide payment levels at a lower rate than the full cost of living. The need for assistance is therefore not *reduced* because of the presence of a spouse or child in the household.

6. These are assigned when one individual in the couple is:
 (i) aged and the other blind, or

 (ii) aged and the other disabled, or
 (iii) blind and the other disabled.
42 C.F.R. 416.202(d)(e).

The Commonwealth, therefore, has complied with the statutory and regulatory provisions governing the federal administration of the state optional supplementary payment. With this background in mind, it is now necessary to consider the method by which the Secretary administers both the federal and state components of Title XVI of the Social Security Act.

## IV. THE CALCULATION OF BENEFITS

When a claim is received, the Secretary first calculates the eligibility for and the amount due an applicant under the federal component of the SSI program. The method of calculation is governed by regulation, 20 C.F.R. Subparts K and L, §§ 416.1100–416.1266. In essence, the Secretary initially computes the Countable Income. Countable Income is the amount of the applicant's earned and unearned income, less certain exclusions and disregards. This figure is then compared with the appropriate Standard Payment Level ("SPL"). The federal benefit is, therefore, the amount by which the SPL exceeds the applicant's Countable Income. This basic pattern is used to compute federal benefit payments for all applicants. However, if the applicant is married, and the spouse is not categorically eligible for benefits, the Secretary uses an important modification when computing the applicant's Countable Income. This modification is commonly referred to as "deeming."

Income maintenance programs assume that persons who are legally responsible for the applicant, such as parents or spouses, make their income available to the applicant. This income is deemed to be available to the applicant for purposes of determining his or her income eligibility. Each income maintenance program [7] develops a method of calculating that portion of a parent's or spouse's income which is deemed available to the applicant.

Under Title XVI of the Social Security Act, an individual applicant's "income shall be deemed to include any income and resources of [a] spouse, whether or not available to such individual, except as determined by the Secretary to be inequitable under the circumstances." 42 U.S.C. § 1382e(f)(1). The Secretary is empowered to promulgate reasonable regulations in accordance with this broad statutory guideline, *cf. Kollett v. Harris*, 619 F.2d 134 (1st Cir.1980). Under these regulations, effective in their present form on January 1, 1977, 20 C.F.R. §§ 416.1160 *et seq.*, the ineligible spouse's earned and unearned income minus certain exclusions, 42 C.F.R. § 416.1161(a), and allocations, 20 C.F.R. 416.1163(b), is calculated, 20 C.F.R. § 416.-1163(a). If the amount of the ineligible spouse's income is *more than* the federal benefit rate for an eligible individual, the ineligible spouse's income is combined with the applicant's income for purposes of computing the Countable Income, 20 C.F.R. § 416.1163(c)(2).

Finally, the Secretary compares the Countable Income of the applicant to the SPL for an eligible *couple*, 20 C.F.R. § 416.1163(c)(2)(iii). The federal benefit due the individual claimant is therefore the amount the federal SPL for a *couple* exceeds the individual's Countable Income which now includes deemed spousal income.

There are two important conditions attached to these regulations. Deeming will not take place:

1) if the income of the ineligible spouse is less than one half of the federal SPL for an individual, 20 C.F.R. § 416.1163(c)(1), or

2) if deeming would increase the federal benefits above the amount the individual would receive without deeming, 20 C.F.R. § 416.1163(c)(1). This latter "windfall provisio" insures that an SSI benefit will be no higher under the deeming rules than it would be if deeming did not apply. Therefore, an applicant receives either the amount computed by deeming spousal income and comparing the aggregate Counta-

---

**7.** Deeming is authorized for determinations under Medicaid, 42 U.S.C. § 1396a(a)(17), and Aid To Families With Dependent Children, 42 U.S.C. § 602.

ble Income to the SPL for a *couple* or the amount computed with reference to only the individual's Countable Income as compared to the SPL for an *individual.* The applicant will receive the lower of the two resulting figures and therefore can never benefit from the requirement to deem spousal income.

The foregoing applies to the calculations for the federal component of the SSI program. If a state has executed an agreement, the Secretary then continues computation to incorporate the optional state supplementary payment. 20 C.F.R. Subpart T, §§ 416.2001 *et seq.* As a condition of the administration agreement:

> The regulations in effect for the supplementary security income program shall be applicable in the federal administration of state supplementary payments except as may otherwise be provided in this subpart as found by the Secretary to be necessary for the effective administration of both the basic federal benefit and the state supplementary payment.

20 C.F.R. § 416.2005(d). The regulations further provide:

> Where not inconsistent with the provisions of this subpart, eligibility for and the amount of the state supplementary payment will be determined pursuant to the provisions of Subparts A through Q of this part.

20 C.F.R. § 416.2015(c). The regulation governing the calculation of state supplementary payments emphasized the role of deeming of spousal income:

> In the case of an eligible individual living with an ineligible spouse with income ... the federal benefit rate from which Countable Income will be deducted is the *federal benefit rate applicable to a couple.*[8]

20 C.F.R. § 416.2025(b)(1) (emphasis supplied). The regulations then set forth the balance of the mathematical formula:

> (2) If Countable Income is equal to or less than the amount of the federal

benefit rate, the full amount of the state supplementary payment *as specified in the federal agreement* will be made.

> (3) If Countable Income exceeds the amount of the federal benefit rate, the state supplementary payment will be reduced by the amount of such excess.

> (4) No state supplementary payment shall be made where Countable Income is equal to or exceeds the sum of the federal benefit rate and the state supplementary payment rate.

20 C.F.R. § 416.2025(b) (emphasis supplied). In other words, the Countable Income of the applicant minus the federal benefit is compared to the state supplementary payment level "as specified in the federal agreement." 20 C.F.R. § 416.-2025(b)(2).

The Secretary has clarified this directive, not in the regulations, but in the Social Security Manual:

> The fact that a couple computation is used to determine the federal payment should not affect the appropriate state standard. For example, if a state has one standard for an individual *in a deeming situation* and another for a couple, it would still be appropriate to use the individual standard even though a couple standard is used for the federal portion of the benefit.

Program Operations Manual System ("Manual"), § SI 99850.220. Therefore, after deeming spousal income to an eligible individual's Countable Income and comparing this total Countable Income to the federal SPL for a couple, the Secretary nonetheless applies the state supplementary payment level for an *individual.* An attenuated version of the Secretary's own example, *id.,* best illustrates this approach:

| $600.00 | Eligible individual's income |
| 360.00 | Ineligible spouse's income |
| $960.00 | Total income attributed to eligible individual |

---

**8.** This phrase was introduced by amendment in order to conform the state supplementary computations provision with the deeming regula-

tions. 43 Fed.Reg. 39,566 (commentary accompanying proposed regulations, codified at 20 C.F.R. § 416.2025(b)(1)).

| | |
|---|---|
| – 60.00 | Income exclusion |
| $900.00 | Countable Income |
| –800.10 | Federal SPL for *couple* |
| $ 99.90 | Excess Countable Income |
| | |
| $261.60 | State SPL for *individual* |
| – 99.90 | Excess Countable Income |
| $161.70 | State supplement payable |

Despite the language of her own regulations, particularly the directive that the state supplement be determined pursuant to the preceding provisions governing federal benefit payments, 20 C.F.R. § 416.-2015(c), the Secretary insists that her computation method, as set forth in the Manual, is a correct and valid interpretation of both the regulations and the statutory mandate.

The Secretary maintains that she is under no obligation to apply the federal benefit calculations to the computations for state supplementary payments. Rather, she is required, by virtue of the statute, 42 U.S.C. § 1382e, her own regulations, 20 C.F.R. Subpart T, and the Agreement between her Department and the Commonwealth, to apply the state SPL applicable of an *individual*, even when that individual lives with an ineligible spouse. In support of this contention, the Secretary notes that the Agreement does not designate a separate living arrangement for an individual living with an ineligible spouse, Agreement, Tr. at 528, even though federal regulations would permit a state to so designate in its agreement. 20 C.F.R. § 416.-2030(a)(2). The Secretary reasons that in the absence of such a stipulation by a state, she must apply the SPL of an eligible individual, whether or not the claimant lives with an ineligible spouse, and whether or not the claimant's Countable Income has been subjected to deeming of the ineligible spouse's income. Plaintiffs, however, maintain that under the statute governing the program and the regulations as written, the Secretary is required to apply the state SPL of a *couple* to decide the amount of the state supplementary payment due an individual whose Countable Income includes deemed spousal income. Absent specific findings and published regulations

by the Secretary that the state supplementary provisions can be administered otherwise, the Secretary is required by virtue of both the Social Security Act, 42 U.S.C. § 1382e, to apply the state SPL assigned for a *couple* when an applicant's income has been deemed to include the income of the ineligible spouse.

A fair reading of the Social Security Act, its legislative history, the Federal-State Agreement and the Secretary's own regulations supports the plaintiffs' contentions.

## V. THE ANALYSIS

The statute which controls the instant dispute states that the state optional supplementary payments shall be made subject to the rules, regulations and provisions of the Secretary as she finds necessary to achieve the efficient and effective administration of both the federal and state's programs. 42 U.S.C. § 1382e(b)(2). In so legislating, Congress noted:

In general, it is anticipated that the same rules and regulations would be applied to both federal and state supplemental payments with the only difference being the level of such payments. However, the Secretary could agree to a variation affecting only the state supplement if [s]he finds [s]he can do so without materially increasing [her] costs of administration and if [she] finds the variation consistent with the objectives of the program and its efficient administration.

H.Rep.P.L. 92–603, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News, 4996, 5185. In 1977, the Committee on Finance to the United States Senate issued a Report on the Supplemental Security Income Program. This Report reaffirmed the Congressional commitment to uniformity of administration and expressly quoted the above passage of legislative history. The Committee observed that "such variations should be the exception rather than the rule and ... should be agreed to only when they would not materially affect either the cost or efficiency of the program's administration." Sen.Rep. on Sup-

plemental Security Income, 95th Cong., 1st Sess. at 70 (1977).

The Committee further noted:

The Department [of Health and Human Services] apparently decided that the rules on state supplementation were open to negotiation with the states *rather than being determined by the statute.* Accordingly, the Department has entered into agreements to administer a wide variety of different types of variations ....

... The number and complexity of the variations available to the states ... constitute a considerable administrative burden on the Social Security Administration and also represent a significant departure from the enacted nature of the program as one which would involve a flat-grant approach to income maintenance. Both of these results are *clearly contrary to the stated legislative history.*

*Id.* at 70 (emphasis supplied). Most importantly, the Committee commented that the Secretary's policy of permitting states to control the assignment of so varied an array of payment levels was contrary to the statute as written and as interpreted by the House Report:

The legislative policy decision that was made and that should have been considered binding by the administrative agency was to allow only the most simplified types of state supplementation. Departure from that should have occurred only with legislative authorization which was never given or, for that matter, sought.

*Id.* at 71.

Shortly after this Report issued, the Secretary promulgated revised regulations governing the administration of both federal and state components of the SSI programs. Regulations governing deeming of spousal income were promulgated, and the calculations for computation of state supplemental payments were amended. 43 Fed.Reg. 39566. However, the Secretary continued to permit states to elect up to nine categories and five "living arrangement" variations. Despite its regulatory mandate to administer both programs under the same rules, 20 C.F.R. 416.2005(d), and despite its explicit incorporation by reference of the federal calculation method, 20 C.F.R. § 416.2015(c), the Secretary continued to apply the state individual standard payment level to all individuals, whether or not their Countable Income included income deemed from their ineligible spouses. Manual, *supra.*

The Federal-State Agreement entered into by the Commonwealth recognizes that the Secretary retains full control with respect to the administration of state supplementary payments. Agreement, Article III H, Tr. at 493. The Secretary's contention that she is without authority to apply any state payment level but the individual, regardless of the manner in which Countable Income is derived is supported by neither the statutory mandate, its legislative history, the Federal-State agreement, nor the Secretary's own regulations.

When a court is asked to consider whether an agency's interpretation of its own regulations is valid, it must do so in light of the standards which guide judicial scrutiny of an agency action.

 It is well settled that courts should afford considerable respect to an agency's interpretation of its own regulations. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). This is especially true when the Social Security Act is at issue for, as has been noted, its "Byzantine construction makes the Act almost unintelligible to the uninitiated .... Congress has therefore conferred on the Secretary exceptionally broad authority to proscribe standards for applying certain sections of the Act." *Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). Particularly, "matters of accounting, unless they be the expression of whim rather than an exercise of judgment, are for the agency." *Hospital San Jorge v. Secretary of Health, Education and Welfare,* 616 F.2d 580, 589 (1st Cir.1980) (Campbell, J., concurring) (*quoting American Telephone and Telegraph Co. v. United States,* 299

U.S. 232, 234, 57 S.Ct. 170, 172, 81 L.Ed. 142 (1936)). Generally, therefore, the Secretary's interpretation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965). As the Court of Appeals for the First Circuit has stated:

> Our deference to an agency's interpretation of its own regulations is not total. We still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve .... Should we decide to accept the agency's interpretation of its regulation, we must then consider whether the regulation so interpreted is consistent with the statute under which it is promulgated.

*Cheshire Hospital v. New Hampshire-Vermont Hospitalization Service, Inc.*, 689 F.2d 1112, 1117–18 (1st Cir.1982) (citations omitted). In light of the foregoing standards and this Court's reading of the applicable statutes and regulations, this Court concludes that the Secretary's calculations of the state supplementary payment levels is erroneous at law and must be set aside.

■ The Secretary's regulations clearly state that the methodology applicable to the state supplementary payment levels is to be the same as that which is used for federal benefit computation. 20 C.F.R. § 416.2015(d). The statute provides that the same rules and regulations will apply unless the Secretary makes findings that a deviation is necessary for the efficient and effective administration of both the federal and state programs. 42 U.S.C. § 1382e. The record is devoid of any indication that the Secretary found, even in the most informal sense, that a deviation from the federal computation method was necessary. The Secretary only asserts that she has no discretionary power to apply the couple's standard to the state payment.

The Secretary insists the Massachusetts Agreement has assigned all individuals, even those living with ineligible spouses whose income has been deemed to be paid, only the SPL of the individual. I cannot agree with this interpretation of the Federal-State Agreement. Living Arrangement A directs that full cost of living will be applied to all persons living independently, whether they live alone, with an ineligible spouse or child, or with an *eligible* spouse or child. Were the Secretary's view accepted, even benefits for eligible couples would be paid with reference to the individual state SPL. Massachusetts, therefore, has not expressly directed that applicants to whom spousal income has been deemed must be given benefits with reference to the state SPL for an individual. I believe the Secretary has underestimated her authority and her obligations under the Social Security Act.

In the absence of findings to justify a variance, the Secretary is obliged by the terms of the governing statute and her own regulations to compute the state supplementary payment in the same manner as is used to determine federal benefit payment. The Secretary is therefore obligated to compare the "excess Countable Income" of an eligible applicant to whom spousal income has been deemed with the state SPL for an eligible couple, subject, of course, to the windfall proviso, 20 C.F.R. § 416.1163(c)(1), preventing unjust enrichment to the applicant. Accordingly, the Secretary's practice of applying the state individual SPL is erroneous and must be set aside.

## VI. THE REMEDY

Having concluded that the plaintiffs' motion must be granted in part on the basis of the merits, it is now necessary for the Court to consider the issuance of appropriate remedial orders.

This action was brought in accordance with the provision for judicial review in the Social Security Act, 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3). Plaintiffs have asked for several forms of relief. They request an order declaring the Secretary's method of computing eligibility for and the amount of optional state sup-

plementary payments erroneous at law. Plaintiffs further request an order permanently enjoining the Secretary from henceforth calculating eligibility and amount of these payments in a manner inconsistent with the statute and regulations which govern the administration of these payments. I believe that both these requests are permissible and appropriate, *Johnson v. Mathews*, 539 F.2d 1111 (8th Cir.1976). Since this case was properly maintainable as a class action under Fed.R.Civ.P. 23, Memorandum and Order dated January 11, 1982, and since Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), confers jurisdiction on this Court to hear the individual claims of the class members, injunctive relief provides the best procedure by which the power of this Court may be exercised in a single appropriate procedure. This Court will therefore enter an order declaring that the method by which the Secretary has previously calculated the eligibility for and amount of the optional state supplementary payment is erroneous. Further, the Secretary shall henceforth be permanently enjoined from calculating such benefits in a manner inconsistent with those regulations.[9]

■ Pursuant to Section 205 of the Social Security Act, 42 U.S.C. § 405(g), this Court has the power to affirm, reverse, or remand the decision of the Secretary on any of the applications which qualify for judicial review. Eight such applications are complete and before the Court. In accordance with the statutory grant of power, I believe that the Court is vested with the power to order the decisions of the Secretary in these eight cases reversed and remanded for recalculation of all benefits, past and future. For the reasons stated herein, I believe that such orders are not appropriate, either for the eight named plaintiffs or for the members of the class which they represent. However, the applications of plaintiffs Barry and Pinnex will be reversed and remanded to the Secretary for recalculation of *future* state supplementary payments due them.

Plaintiffs have cited several cases for the proposition that this Court routinely orders "retroactive" payments of benefits due claimants under the Social Security Act. Plaintiffs' Post-Hearing Memorandum at 11, n. 3. However, these cases are inapposite. First, all orders cited in which the Secretary's decision was reversed involved cases in which this Court reviewed the agency's *factual* findings under the "substantial evidence" test. 42 U.S.C. § 405(g). In the case at bar, however, the Court has concluded that the actions of the Secretary were erroneous *at law*. Further, all cases cited involved the combined benefits available under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, or benefits distributed under Title II of the same Act, 42 U.S.C. §§ 402 *et seq.* The instant case, on the other hand, addresses only the state portion of the Title XVI program and, as such, is unique. Courts have ordered retroactive application of decisions concerning programs which are solely the responsibility of the federal government, *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir.1975), *Jones v. Califano*, 576 F.2d 12 (2d Cir. 1978), *Wright v. Califano*, 603 F.2d 666 (7th Cir.1979). None has ordered retroac-

---

**9.** The defendant has voiced no objections to any declaratory or prospective injunctive relief. The Secretary does contend, however, that this Court is without power to enter an order which would require recalculation of past benefits reduced, terminated, or denied to the named plaintiffs or the class which they represent. As grounds for this contention, the Secretary raises an issue of sovereign immunity. I should hasten to point out that the Secretary does not assert the immunity of the federal government from suit. Rather, she asserts that the Eleventh Amendment bars this action because any such order would amount to an award of retroactive money damages payable out of the state treasury, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Because of the result reached on the issue of remedy, it is not necessary for the Court to consider this contention at any length. Suffice it to say *Edelman, supra*, is distinguishable on its facts and therefore does not control the instant action. For the purpose of fashioning the instant remedy, the Court will assume without deciding that the Eleventh Amendment is not a bar to retroactive monetary relief when neither the State nor any of its officials is a party to the action.

tive application for programs administered by a federal agency, but funded by a state. The case at bar is unique, and this Court must be especially cautious to avoid any order which may disturb the delicate balance the statute governing the Title XVI program is intended to strike between the federal government and the participating states.

In *Jimenez*, 523 F.2d at 689, the court addressed the issue of retroactivity and applied the test first articulated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to decide the appropriateness of retroactive application. *Chevron* provides that a court should consider three factors:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed .... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application for 'where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'

404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted). The *Chevron* test, therefore, assumes that a law will be applied retroactively unless the court finds that circumstances compel the opposite result. I believe that the circumstances of the instant case compel this Court to limit the application of the principles announced today to prospective relief only.

First, to my knowledge, the issue decided in the instant case is one of first impression. Unlike the tug-of-war now ensuing between the Secretary and the judiciary of the Ninth Circuit, *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984), the Secretary has not wilfully ignored prior cases which have challenged her interpretation of the regulations governing optional state supplementary payments.

Secondly, Congress clearly intended, and sought to encourage, widespread participation in federal-state agreements. Despite the hold-harmless provision, P.L. 92–603 § 401(a)(1), the Commonwealth would be responsible for a portion of the underpayments revealed by the execution of an order for recalculation of optional state supplementary payments. To hold states vulnerable to fiscal liability brought about by the Secretary's erroneous methodology, particularly on a class-wide basis, would discourage states from entering these agreements. A court should design remedies that will encourage states to carry out Congress's intent. *Cf. Foggs v. Block*, 722 F.2d 933 (1st Cir.1983). Retroactive application would frustrate the legislative goal of encouraging state participation.

Finally, this Court must consider whether retroactivity would produce substantial inequitable results. I believe that inequity would result, particularly with respect to retroactive application, to the entire class. The Secretary would bear the administrative burden of recalculating the applications of all class members, and this is a formidable task. The Secretary was able to venture a mere guess as to the numbers of claimants actually affected by past practices. The Secretary submitted, by way of answers to interrogatories, that it would be impossible to determine the exact numbers and identities of all persons for whom benefits were denied, terminated or reduced due to prior methods of calculating the optional state supplementary payments, Answers to First Set of Interrogatories, Nos. 2 and 5, and objected to the requests on the grounds of burdensomeness. The plaintiffs did not refute the objection or the responses given by way of argument or offer of proof. I must conclude, therefore, that an order for recalculation of state benefits on a class-wide basis would present a task so formidable to the Secre-

tary that it would divert agency attention away from the already considerable obligation of processing present applications.

I must also conclude that substantial inequity would result even if the order for recalculation were limited to the named plaintiffs, and this inequity would accrue to the state and its citizens.

If, upon recalculation, the Secretary were to conclude that plaintiffs had been underpaid, the Commonwealth would be responsible for the underpayments. Federal-State Agreement, *supra.* Plaintiff suggests that if the Commonwealth were sufficiently aggrieved by this result, it would withhold reimbursement from the federal government. The Secretary then could sue the Commonwealth for the amount owed. Plaintiff's Post-Hearing Memorandum at 5. This is hardly a desirable solution. The legislature intended Title XVI to be a program of cooperation between the federal government and participating states. Were this cooperation disrupted, a state could decide to withdraw from participation. If it still desired to offer an optional state supplement to the Title XVI program, it could choose to administer the distribution of those payments itself, but such a choice would divert state monies away from direct payments to needy recipients and towards the cost of administration. The diversion of state monies towards administrative costs is not in the best interests of its needy citizens, some of whom would be deprived of benefits essential to survival.

I conclude, therefore, that the principles announced in this decision today shall not be applied retroactively. The Secretary's decisions on the applications of the eight named plaintiffs and the members of the class represented shall not be disturbed as far as past-due benefits are concerned. However, the applications of plaintiffs Barry and Pinnex will be reversed and remanded to the Secretary for recalculation of future benefits due them from the date of issuance of the accompanying Order, in accordance with this Memorandum. 42 U.S.C. § 405(g).

Appropriate Orders shall issue.

### ORDER AND JUDGMENT

This matter came before me upon cross-motions for summary judgment. Having considered the arguments of the parties presented upon briefs and oral argument, and, in accordance with the Memorandum issued on this same date, I hold that the motion of the defendant Secretary of Health and Human Services must be, and hereby is, DENIED. Likewise, the motion of the plaintiffs is GRANTED in part and DENIED in part, Fed.R.Civ.P. 56. Plaintiffs' prayer for retroactive application of the principles enunciated today must be DENIED for the reasons set forth in the accompanying Memorandum. It is therefore adjudged and ordered that:

1. The method by which the Secretary has calculated the eligibility for and amount of the optional state supplementary payment to the Supplemental Security Income Program, 42 U.S.C. §§ 1381 *et seq.,* authorized under Chapter 118A, §§ 1 *et seq.* of the Massachusetts General Laws and the Agreement executed between the Secretary and the Commonwealth of Massachusetts, is inconsistent with the Secretary's regulations governing the computation, 20 C.F.R. Subpart T, and the statute under which those regulations were promulgated. 42 U.S.C. §§ 1381 *et seq.*

2. The Secretary is hereby permanently enjoined from calculating the eligibility for and amount of the optional state supplementary payment to the Supplemental Security Income Program in a manner inconsistent with the statutory and regulatory mandate. State supplementary payments authorized by the Commonwealth of Massachusetts shall henceforth be calculated in accordance with the provisions set forth in the statute and regulations.

3. The decision of the Secretary in the action of plaintiff Barry is reversed insofar as future state supplementary payments are at issue. The case is remanded to the Secretary for recalculation of future state

supplementary payments, effective this date, in accordance with this Court's Order and accompanying Memorandum. The Secretary's decisions as to the remaining named plaintiffs are hereby affirmed. 42 U.S.C. § 405(g).

It is So Ordered.