MARY KRAFT vs. COMMISSIONER OF PUBLIC WELFARE.

Hampshire.  February 6, 1986. — September 3, 1986.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Public Welfare,* Supplemental security income payments, Reimbursement of general relief payments. *Social Security Act. Department of Public Welfare. Administrative Law,* Agency's interpretation of statute. *Constitutional Law,* Equal protection of laws.

Description of the history and operation of the Commonwealth's general relief program, the Federal program of Supplemental Security Income (SSI), and the Commonwealth's program of supplemental assistance to SSI recipients. [360-365]

The practice of the Department of Public Welfare, acting under 106 Code Mass. Regs. § 312.610 (1981), in applying a recipient's initial retroactive payment of Federal benefits under the Supplemental Security Income (SSI) program toward the recoupment of the total amount of Massachusetts general relief payments made to her as "interim assistance" during the period her SSI application was pending violated neither the provisions of 42 U.S.C. § 1383 (g) (1982) nor the department's obligation under G. L. c. 18, § 2 (B) (*d*), to provide benefits on a "fair, just and equitable basis," nor equal protection principles, even though the department's methodology resulted in the recipient's receiving less total aid, under the SSI program and the department's program of supplemental assistance, than she would have received had she not sought interim assistance. [365-371]

CIVIL ACTION commenced in the Superior Court Department on May 31, 1983.

The case was heard by *Andrew G. Meyer,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey Leukens* of Michigan, for the plaintiff.

*Joan C. Stoddard,* Assistant Attorney General, for the defendant.

O'CONNOR, J. In this appeal, the plaintiff challenges the methodology used by the Department of Public Welfare (de-

partment) in calculating the amount of reimbursement due the department for "interim assistance" provided while the plaintiff's application for Supplemental Security Income (SSI) was pending before the Social Security Administration. 42 U.S.C. § 1383(g) (1982). The plaintiff resided at the Park Rest Home in Florence since at least December, 1981. At that time, she applied for benefits under the SSI program, 42 U.S.C. § 1381 et seq. (1982). The plaintiff applied to the department for general relief benefits. As part of this application process, she was required to sign a form which authorized the Social Security Administration to send her first SSI check to the department, and further authorized the department "to deduct from such first payment an amount sufficient as reimbursement for interim assistance paid to" the plaintiff.[1] The plaintiff qualified for general relief under G. L. c. 117, § 4.[2] The department approved her application for benefits effective March 10, 1982. The plaintiff received general relief benefits totaling $3,462.29 during the period her SSI application was pending (the interim period). Throughout this period, the plaintiff's monthly general relief benefit consisted of the rest home's per diem rate, as set by the Rate Setting Commission, and a $40 personal care allowance. 106 Code Mass. Regs. § 313.790(C) (1979). 106 Code Mass. Regs. § 313.828, 292 Mass. Reg. 12 (July 1, 1981). The plaintiff continued to receive alimony payments during this period which were deducted from her general relief benefits. The plaintiff's application for SSI was approved in October, 1982. The Social Security Administration forwarded

---

[1] This practice is sanctioned by 42 U.S.C. § 1383(g),and is not questioned here.

[2] General Laws c. 117, § 4 (1984 ed.), provides, in relevant part: "A person who has applied for assistance under [G. L. c. 118A] shall be eligible for assistance under this chapter only until the end of the month in which such person receives his first assistance payment under said [G. L. c. 118A]."

General Laws c. 118A (1984 ed.), establishes a program of State supplemental assistance to persons eligible for SSI benefits under Title XVI of the Social Security Act. Thus, reading the two statutes together, one may qualify for general relief only until the end of the month in which the first SSI payment is received.

the plaintiff's first check to the department in early 1983. The check was in the amount of $2,548.58, and represented the total SSI benefits due to the plaintiff from December, 1981, through December, 1982.[3]

By letter dated February 9, 1983, the department notified the plaintiff that since the amount of general relief paid to the plaintiff exceeded her first SSI check, the department was retaining the entire SSI check as reimbursement for the general relief paid to the plaintiff during the interim period. The plaintiff appealed this decision and an administrative hearing was held pursuant to G. L. c. 18, § 16 (1984 ed.). The plaintiff argued that the department should have calculated its reimbursement as if she had been receiving SSI since she was first eligible to do so in December, 1981. As an SSI recipient, the plaintiff would have been entitled to $79.84 per month as a personal care allowance. See 106 Code Mass. Regs. § 327.030, 289 Mass. Reg. 2 (July 1, 1981). She also would have been entitled to have the department pay the rest home the difference between the rest home's monthly cost (based on its per diem rate), and the balance of her SSI benefit less her personal care allowance. See G. L. c. 118A, § 7A. The department's appeals referee, citing 106 Code Mass. Regs. § 312.610, 6 Code Human Services Regs. III, Section B (Sept. 1981), upheld the department's decision pursuant to regulations which required the department to "total the amount of [general relief] payments made to the recipient during the period of SSI eligibility" and to deduct this amount from the SSI payment.

The plaintiff sought judicial review of the department's decision pursuant to G. L. c. 30A, § 14 (1984 ed.). The plaintiff alleged in her complaint that the department's decision was based upon errors of law, unsupported by substantial evidence, and arbitrary and capricious. The complaint also sought declaratory relief under G. L. c. 231A (1984 ed.), and prayed

---

[3] The first SSI check is retroactive to the date of eligibility, and has been referred to as a "balloon check." *Rivers* v. *Schweiker,* 692 F.2d 871, 872 n.1 (2d Cir. 1982).

that a declaration enter that the department's practice of "enriching itself at the expense of aged and disabled rest home residents" violates both State and Federal law, and the equal protection clause of the Fourteenth Amendment to the United States Constitution.

A judge of the Superior Court upheld the department's decision without declaring the rights of the parties. The plaintiff appealed, and we transferred the case to this court on our own motion. We agree with the judge's determination, but we remand this case for the entry of a judgment declaring the rights of the parties.

At the heart of the plaintiff's appeal is the notion that an SSI applicant who requires interim assistance in the form of State-funded general relief payments should be afforded all benefits SSI recipients are entitled to under the SSI program and under the State's supplemental assistance program, G. L. c. 118A, retroactive to the date of SSI eligibility. An analysis of the merits of this theory requires an understanding of the history and operation of the State's general relief program, the SSI program, and cognate provisions of the State's program of supplemental assistance to SSI recipients. The interim assistance reimbursement program must be viewed, in context, as a component of the SSI program, which generally encourages States to provide supplemental benefits. See 42 U.S.C. § 1383e (1982 & Supp. II 1984) and note 5, *infra*.

*The General Relief Program.*

General Laws c. 117, § 1 (1984 ed.), authorizes the department to provide general relief to Massachusetts residents who meet the department's eligibility criteria. The general relief program is wholly State-funded. Persons receiving SSI benefits ordinarily do not qualify for general relief. 106 Code Mass. Regs. § 312.160(C), 252 Mass. Reg. 10 (April 1, 1981). However, the department allows persons awaiting determination of their applications for SSI to be temporarily eligible for general relief. 106 Code Mass. Regs. § 312.330 (1979). The plaintiff qualified for general relief in these circumstances. See G. L. c. 117, § 4.

*The Supplemental Security Income Program.*

Congress established the SSI program to provide monthly payments to aged, blind, or disabled persons who have little or no income and resources. *Bouchard* v. *Secretary of Health & Human Servs.,* 583 F. Supp. 944, 947 (D. Mass.), modified as to relief granted, 604 F. Supp. 171 (D. Mass. 1984). The SSI program first took effect on January 1, 1974, and replaced three federally-funded programs which had been administered by the individual States under the Social Security Act.[4]

Under the three programs in effect before the SSI program was implemented, each State determined the amount of benefits due applicants. The SSI program was enacted, in part, to set a nationally uniform minimum benefit level. Because some States provided benefits at a higher level under the earlier programs, Congress authorized the States to supplement the Federal SSI benefits. See 42 U.S.C. § 1382e.[5] The Commonwealth had a pre-1974 level of assistance higher than the SSI benefit level. *Morales* v. *Minter,* 393 F. Supp. 88, 92 (D. Mass. 1975). Accordingly, the Commonwealth elected to provide State supplementary payments. *Id.*

*Massachusetts Supplemental Assistance Program.*

General Laws c. 118A, as appearing in St. 1973, c. 1210, § 23, became effective January 1, 1974, the same date the SSI program took effect. Section 1 provides that the department "shall administer a program of financial assistance for aged and disabled persons . . . which shall be called state supplementary payments, [and] shall be based on need and granted in supplementation of benefits granted by the United States government" under the SSI program. Section 1 further authorizes

---

[4] These programs were first enacted in Titles I, X, and XVI of the Social Security Act, and were respectively titled "Aid to the Permanently and Totally Disabled," "Aid to the Blind," and "Old Age Assistance." *Bouchard* v. *Secretary of Health & Human Servs., supra* at 947.

[5] Title 42 U.S.C. § 1382e encourages States to provide supplemental assistance by excluding State benefits from an SSI applicant's income for purposes of calculating the amount of the SSI benefits and by allowing States to enter into agreements with the Secretary of the United States Department of Health and Human Services under which the Secretary administers the State supplementary payments. *Bouchard, supra* at 947.

the department to establish standard levels for State supplementary payments subject to the approval of the Executive Office of Human Services. Pursuant to G. L. c. 118A, § 3,[6] the Commonwealth has entered into an agreement with the Secretary of the United States Department of Health and Human Services (Secretary) under which the Secretary provides the State's supplementary payments as part of an individual's SSI grant. An application to the Social Security Administration for SSI benefits is deemed to be an application for State supplementary assistance payments. G. L. c. 118A, § 4. The Commonwealth reimburses the Social Security Administration for the additional monies expended in State supplementary assistance payments. *Morales* v. *Minter, supra* at 92.

A uniform monthly SSI benefit is paid to all SSI recipients who reside in rest homes. The department allows SSI recipients to retain $79.84 from the monthly SSI benefit as a personal care allowance. 106 Code Mass. Regs. § 327.020(10). In many cases, the SSI benefit is not sufficient to pay the rest home's per diem rate after the personal care allowance is deducted. In addition to payments supplementing the Federal SSI benefit, G. L. c. 118A allows the department to provide a "special grant" to rest home residents who receive SSI benefits "whenever the aid provided under this chapter is insufficient to meet said rate established for such rest home." See G. L. c. 118A, § 7A. Section 7A further provides that the department "may pay such grant either to the recipient or to the rest home." The department concedes that it provides payments under G. L. c. 118A, § 7A, on behalf of all SSI recipients living in rest homes whose SSI benefit levels, less the $79.84 personal care allowance (106 Code Mass. Regs. § 327.030), are not sufficient to pay for the rest home's rate.

---

[6] General Laws c. 118A, § 3, provides, in relevant part: "The commissioner of public welfare . . . shall enter into an agreement with the Secretary of the United States Department of Health, Education and Welfare, under which the Secretary shall, on behalf of the commonwealth, administer the program of state supplementary payments authorized by [G. L. c. 118A, § 1]." Pursuant to Pub. L. No. 96-88, 93 Stat. 695 (1979), the Department of Health, Education, and Welfare became the Department of Health and Human Services.

*The Interim Assistance Reimbursement Program.*

The interim assistance reimbursement program has been viewed as Congress's response to the Supreme Court's decision in *Philpott* v. *Essex County Welfare Bd.,* 409 U.S. 413 (1973), which held that a provision of the Social Security Act, 42 U.S.C. § 407, precluded States from using legal process to recover welfare benefits from retroactive disability insurance benefits. See *Kerlinsky* v. *Commonwealth,* 17 Mass. App. Ct. 501, 502-503 (1984), citing *Moore* v. *Colautti,* 483 F. Supp. 357, 363 (E.D. Pa. 1979), aff'd without opinion, 633 F.2d 210 (3d Cir. 1980). Section 1383(g) provides, in relevant part: "[T]he Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State . . . from the benefits withheld an amount sufficient to reimburse the State . . . for interim assistance furnished on behalf of the individual by the State." A State is required, pursuant to the agreement with the Secretary, to return any excess to the SSI recipient. See 42 U.S.C. § 1383(g)(4). The statute allows a State to determine the amount of reimbursement due, subject to a recipient's right to appeal. 42 U.S.C. § 1383(g)(4)(B).[7]

Subsection (3) of 42 U.S.C. § 1383(g), defines "interim assistance" as "assistance financed from State or local funds and furnished for meeting basic needs during the period, beginning with the month in which the individual filed an application for [SSI] benefits . . . for which he was eligible for such benefits." With the exception of the provision which defines the beginning of the interim period as the month in which an

---

[7] Title 42 U.S.C. § 1383(g)(4) provides that States must have agreements in effect with the Secretary in order to receive reimbursement for interim assistance. Such agreements shall provide that if the Secretary pays a State "in reimbursement for interim assistance . . . an amount greater than the reimbursable amount authorized by paragraph (1), the State . . . shall pay to the individual the balance of such payment in excess of the reimbursable amount" within ten working days. Subparagraph (*B*) provides that "the State will comply with such other rules as the Secretary finds necessary to achieve efficient and effective administration of this subsection and to carry out the purposes of the program . . . including protection of hearing rights for any individual aggrieved by action taken by the State."

individual applies and is eligible for SSI, the Federal statute is silent as to how States are to calculate the amount of reimbursement due for "interim assistance." The statute does not address whether States should credit SSI applicants with other forms of State supplemental assistance they may be eligible for upon becoming eligible for SSI.

The Federal regulations enacted pursuant to 42 U.S.C. § 1383, shed little light on the method States are required to use in calculating reimbursement for interim assistance. Title 20 C.F.R. § 416.1902 (1986) defines "interim assistance," as "assistance the State gives you (including payments made on your behalf to providers of goods or services) to meet your basic needs, starting with the month you apply for SSI benefits and are eligible for them, and ending with (and including) the month your SSI benefit payments begin."[8]

The legislative history and case law construing 42 U.S.C. § 1383(g), suggest that Congress enacted the interim assistance reimbursement program with two objectives: (1) to provide needy SSI applicants with a means of support while their SSI applications are pending, and (2) to encourage States to provide this support by establishing a means to recoup interim assistance payments directly from the Social Security Administration. See *Moore* v. *Colautti,* 483 F. Supp. 357, 363 & n.6 (E.D. Pa. 1979), quoting H.R. No. 94-1296, reprinted in 1976 U.S. Code Cong. & Ad. News 1727 ("The IAR program was established to alleviate hardships on potential SSI recipients resulting from delay in determination of SSI eligibility. . . . In the absence of this reimbursement provision, no State would have the incentive to make interim payments . . ."). See also Views of the Congressional Budget Office, Pub. L. No. 94-365, reprinted in 1976 U.S. Code Cong. & Ad. News 1729-1730

---

[8] This regulation further provides that interim assistance "does not include assistance the State gives to or for any other person. If the State has prepared and cannot stop delivery of its last assistance payment to you when it receives your SSI benefit payment from us, that assistance payment is included as interim assistance to be reimbursed. Interim assistance does not include assistance payments financed wholly or partly with Federal funds." 20 C.F.R. § 416.1902.

("interim payments to SSI applicants are made by States basically to mitigate the impact of the waiting period for certification"); 120 Cong. Rec. 26,090 (July 31, 1974) (State welfare agencies' practice of looking to SSI recipients for reimbursement "has proved unsatisfactory"). It has also been recognized that the program furthers the government's policy interest in preventing recipients from "double dipping" and receiving benefits from two public assistance programs for one time period. See *Moore* v. *Colautti, supra* at 362, 372; *Gillens* v. *Colorado Dep't of Social Servs.,* 644 P.2d 97, 98-99 (Colo. Ct. App. 1982). State interim assistance payments have been compared to a loan which a State is entitled to recoup to the extent necessary to avoid a duplication of assistance payments. *Id.* Cf. *Delmar* v. *Blum,* 53 N.Y.2d 105, 111 (1981) (State allowed only to recoup amount by which husband's home relief benefits increased due to plaintiff's eligibility for interim assistance).

Against this backdrop, we now consider the plaintiff's claims.

1. *Alleged Violation of 42 U.S.C. § 1383(g).*

The plaintiff argues that the department's methodology violates the spirit and purpose of 42 U.S.C. § 1383(g), because it results in her receiving less total aid than she would have received had she never applied for general relief. By retaining the full amount of the plaintiff's first SSI check ($2,548.58) as reimbursement for the full amount of general relief paid ($3,462.29), the department, the plaintiff argues, has paid less assistance than the plaintiff is entitled to receive under the SSI program, and the State program of supplemental assistance. The plaintiff argues that the department should have calculated the amount of reimbursement due for its general relief payments as if the plaintiff had been receiving SSI since December, 1981. Under the method the plaintiff has proposed, the department should have added the amount it would have paid to the rest home under G. L. c. 118A, § 7A, to the retroactive SSI check before deducting the general relief benefits paid to the plaintiff. This would entitle the plaintiff to receive $1,404.08 from her retroactive SSI check. This amount represents the total amount of SSI benefits she was entitled to receive from

December, 1981, through January, 1983, plus the G. L. c. 118A, § 7A, payments the department would have made on her behalf during that time, minus the total amount of general relief she actually received during that time.

Reading 42 U.S.C. § 1383(g), and the regulation promulgated by the Secretary at 20 C.F.R. § 416.1902, it is clear that Congress intended "interim assistance" to be a temporary means of support for SSI applicants. Since the Federal statute and regulations require that this assistance be wholly State-funded, they evince an intent to delegate to the States the power to determine the amount of such assistance and eligibility guidelines. By authorizing the direct payment of the retroactive SSI check to the States so that they may be reimbursed for the "interim assistance" provided, the statute and regulations authorize the States to determine the appropriate methodology for calculating the amount of reimbursement due.

The department's regulation requires the State to recoup the total amount of general relief paid to an SSI applicant during the interim period. Insofar as the regulation seeks to implement 42 U.S.C. § 1383(g), it is owed deference, "particularly, 'where, as here, an agency must interpret a legislative policy which is only broadly set out in the governing statute.' " *Rock v. Massachusetts Comm'n Against Discrimination,* 384 Mass. 198, 204 (1981), quoting *School Comm. of Wellesley v. Labor Relations Comm'n,* 376 Mass. 112, 116 (1978). "In any challenge to a regulation, the plaintiff has the burden of showing that the regulation is invalid or illegal." *Massachusetts State Pharmaceutical Ass'n v. Rate Setting Comm'n,* 387 Mass. 122, 126 (1982), citing *Consolidated Cigar Corp. v. Department of Pub. Health,* 372 Mass. 844, 851 (1977), "We have consistently recognized that an agency 'has considerable leeway in interpreting a statute it is charged with enforcing.' . . . This principle, however, is 'one of deference, not abdication,' and this court will not hesitate to overrule agency interpretations of statutes when those interpretations are unreasonable." (Citations omitted.) *Martinez v. Commissioner of Pub. Welfare,* 397 Mass. 386, 392 (1986).

In essence, the plaintiff seeks to have the Commonwealth place her in the same position that she would have been in had the Social Security Administration processed her SSI application immediately. We discern no such intent on the part of Congress in the interim assistance statute. Moreover, we conclude that, on this record, the application of the department's regulation is not unlawful nor unreasonable.

Given the recognition the SSI statute accords to State supplemental assistance programs (42 U.S.C. § 1382e), we conclude that had Congress intended States to adjust their reimbursement calculations to credit SSI recipients with all supplemental benefits they would be entitled to under State law, Congress would have provided such direction expressly.

The plaintiff argues that an amount is "sufficient to reimburse" a State for interim assistance if it places the State in the same position it would have been in had the SSI applicant received SSI all along and not needed general relief. While the consistency of this interpretation has appeal, in that it requires States to treat all SSI applicants as SSI recipients, it overlooks the time-limited nature of the interim assistance program, which was designed to encourage States to forward State funds to an SSI applicant until SSI funds become available. The Commonwealth provides interim assistance from funds set aside for the general relief program, which ultimately must serve a broader range of indigent persons than SSI applicants. We conclude that the department's regulation is a more reasonable and common sense interpretation of the interim assistance statute because it allows the State to maintain the funding of the general relief program.

The plaintiff argues that the department must treat all SSI recipients alike. However, she has not demonstrated that the department does not do so. The plaintiff overlooks the fact that the interim assistance program is geared only to provide temporary subsistence benefits to SSI applicants before they become recipients.

While our research has not disclosed any case in which the issue presented here has been determined, dictum in decisions of other courts suggests that States are entitled to full reimburse-

ment of the monies they pay out in interim assistance. See, e.g., *Morales* v. *Minter,* 393 F. Supp. 88, 93, 98 (D. Mass. 1975) (where earlier general relief program excluded those over sixty-five awaiting determination of SSI eligibility, court held program denied due process and equal protection and could not be justified by State's interest in conserving resources, where State had "the opportunity under 42 U.S.C. § 1383[g][1] to be fully reimbursed"); *Neal* v. *County of Stanislaus,* 141 Cal. App. 3d 534, 537 (1983) (State receives "an applicant's initial SSI payment, it deducts the full amount of interim assistance paid to the applicant and sends him or her the balance"); *Lynn* v. *Department of Pub. Welfare,* 37 Pa. Commw. 590, 596 (1978) ("legislative intent to fully reimburse a participating state out of SSI funds for interim assistance").

We agree with the Superior Court judge that the plaintiff's reliance on *Delmar* v. *Blum,* 53 N.Y.2d 105 (1981), is misplaced. In that case, the New York Commissioner of Social Services attempted to recoup from the plaintiff's retroactive SSI check more than the commissioner actually paid on her behalf under the State of New York's home relief program. In reversing the commissioner's decision, the New York Court of Appeals did not hold that the commissioner should have treated the plaintiff as if she had been receiving SSI all along. Rather the court held that the commissioner must use the same formula, under the State's home relief program, in computing its reimbursement for "interim assistance," as the State originally used in calculating the amount of home relief the plaintiff was entitled to receive.[9] In contrast, the Department of Public

---

[9] The plaintiff in *Delmar* applied for benefits at a time when her husband was already receiving home relief. When the plaintiff's application for home relief was approved, the commissioner increased the benefits to the plaintiff and her husband to the level fixed for a household of two. Because the commissioner assumed that two persons could live together less expensively than each person could live separately, the benefit level for a household of two was less than twice the benefit level for a household of one. However, when the commissioner deducted the reimbursement from the plaintiff's retroactive SSI check, she did not apply the same presumption. The commissioner deducted one-half of the home relief grant from the plaintiff's check and, since one-half of the home relief grant exceeded the amount of the SSI check, the commissioner withheld the entire check. *Delmar* v. *Blum, supra* at 108.

Welfare has attempted to recoup only what it has paid out on the plaintiff's behalf, and has been left short due to the fact that the plaintiff's benefits under the general relief program ($3,462.29) exceeded her SSI award for the same period ($2,548.58).

We further observe that the plaintiff's methodology would leave the plaintiff with certain monies which, under G. L. c. 118A, § 7A, would have ultimately been paid to the rest home. However, the department paid for the plaintiff's rest home care during the interim period, with the exception of the approximate three-month period between the time the plaintiff applied for SSI and the time the plaintiff went on general relief.[10] Thus, the plaintiff's actual loss reduces to the difference between her personal care allowance under the SSI program ($79.84), and the allowance under the general relief program ($40) or $39.84 per month for each month during the interim period. We discern no inequity in the department's decision to afford the higher personal care allowance only to SSI recipients who are currently receiving SSI, as the plaintiff does now. Nothing in 42 U.S.C. § 1383(g), requires a contrary result.

*2. Alleged Violation of G. L. c. 18, § 2 (B)(d) and Equal Protection.*

The plaintiff contends that the department has denied the plaintiff the benefits afforded by G. L. c. 118A, § 7A, contrary to the department's mandate to provide financial assistance on a "fair, just and equitable" basis under G. L. c. 18, § 2 (B) (*d*) (1984 ed.), and has denied her equal protection of the laws in violation of the United States Constitution. But as we have already noted, the department has provided benefits covering

[10] We note that, with respect to this period, from December, 1981, to approximately March 10, 1982, the plaintiff paid the rest home herself, and received no form of public assistance.

We understand the plaintiff to argue that, as a matter of general principle, the department should have treated her as an SSI recipient since December, 1981. The plaintiff, however, has not presented a consistent argument as to how this principle applies to the three months before she became eligible for general relief. Accordingly, we deem the plaintiff's claim with regard to this period as waived to the extent the plaintiff seeks more than the difference between the SSI and general relief personal care allowances.

the cost of the plaintiff's rest home care under its general relief program. Thus, there is no statutory violation. Furthermore, under the minimum scrutiny we exercise in reviewing social welfare legislation, see *Opinion of the Justices,* 368 Mass. 831, 845 (1975), we conclude that there has been no constitutional violation. The department may constitutionally limit the $79.84 personal care allowance to SSI recipients whose eligibility already has been determined. The department's practice preserves the fiscal integrity of the State's general relief program, which must provide benefits to a broader range of persons than SSI applicants. We cannot find that the plaintiff is similarly situated with respect to those SSI recipients who do not require interim assistance.

We conclude that the department's application of 106 Code Mass. Regs. § 312.610, to recoup the total amount of general relief paid as "interim assistance" from the plaintiff's retroactive SSI check did not violate 42 U.S.C. § 1383(g). The regulation is a reasonable interpretation of the statute, which allows States to recoup an amount sufficient to reimburse them for interim assistance paid to SSI applicants. The alternative which the plaintiff suggests is not supported by the language of the statute nor its legislative history. We likewise conclude that the department's decision does not violate the equal protection clause, nor its statutory obligation under c. 18, § 2 (B) (*d*), to provide benefits on a "fair, just and equitable basis." The plaintiff received the basic benefits to which she was entitled under both the general relief and SSI programs by having the cost of her rest home care paid and by receiving a personal care allowance. Moreover, the plaintiff was not similarly situated to SSI recipients who are entitled to payments under G. L. c. 118A, § 7A, while she was on general relief. While we are not unsympathetic to the fact that the amount of personal care allowance has substantial value to an institutionalized person, we conclude that the department's decision to accord a higher allowance to SSI recipients, whose benefits are partially funded by the Federal government, than to SSI applicants receiving general relief, which is wholly State-funded, rationally furthers the policy of conserving the

State's resources. "It is well settled that courts should afford considerable respect to an agency's interpretation of its own regulations. . . . This is especially true when the Social Security Act is at issue for . . . its 'Byzantine construction makes the Act almost unintelligible to the uninitiated.' . . . Particularly, 'matters of accounting, unless they be the expression of whim rather than an exercise of judgment, are for the agency.'" *Bouchard* v. *Secretary of Health & Human Servs.*, 583 F. Supp. 944, 952 (D. Mass. 1984). We believe these principles apply to the department, in which 42 U.S.C. § 1383(g) vests the power to determine the amount of reimbursement for the interim assistance it provides.

The department's decision was correctly affirmed. The judge should, however, have declared the rights of the parties. *Mullaney* v. *Commissioner of Pub. Welfare,* 9 Mass. App. Ct. 613, 617 (1980), citing *Haverhill Manor, Inc.* v. *Commissioner of Pub. Welfare,* 368 Mass. 15, 31-32, cert. denied, 423 U.S. 929 (1975). We remand this case to the Superior Court in order that the judgment may be modified to declare that the department is entitled to recoup from the plaintiff's retroactive SSI payment check the total amount of general relief that the department paid to the plaintiff.

*So ordered.*