743 F.2d 1396
 7 Soc.Sec.Rep.Ser. 29
 Charles C. LIVERMORE and Karen Conant, individually and on
behalf of all others similarly situated,
Plaintiffs-Appellees/Cross-Appellants,
v.
Margaret HECKLER, Secretary of Health and Human Services,
* Defendant-Appellant/Cross-Appellee.
 Nos. 83-5843, 83-5855.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1983.
Decided Oct. 2, 1984.
 
 Janet Isak Hawley, Baltimore, Md., for plaintiffs-appellees/cross-appellants.
 Melinda Bird, Los Angeles, Cal., for defendant-appellant/cross-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED and SCHROEDER, Circuit Judges, and CROCKER,** District Judge.
 SCHROEDER, Circuit Judge.
 
 
 1
 Plaintiffs are blind California residents who now receive Supplemental Security Income Benefits (SSI) under 42 U.S.C. Secs. 1381-1383c and who, before 1974, received aid under aid to the blind provisions of the Social Security Act, 42 U.S.C. Secs. 1201-1206 (1970) (repealed). The SSI benefit for each plaintiff is the difference between the individual's countable income and a standard benefit rate. In this class action against the Secretary of the Department of Health and Human Services (HHS), plaintiffs contend that the Secretary's interpretation of a "grandfather" provision in the SSI statute, 42 U.S.C. Sec. 1382(h), is contrary to Congress's intent that HHS calculate countable income for the class's SSI benefits under the same rules that California had used to compute their income prior to the passage of SSI. The district court certified the class and ruled in its favor. The government appeals.
 
 
 2
 In addition, some members of the plaintiff class who are married to individuals ineligible for SSI benefits challenge the Secretary's calculation of state supplementary plan (SSP) benefits. The specific practice at issue is the subtraction of a federally calculated income amount for couples from the state benefit rate for eligible individuals. Plaintiffs argue that this method inequitably results in smaller benefits to eligible persons married to ineligible persons. The district court ruled on this issue in favor of the government. The plaintiffs cross appeal.
 
 
 3
 We affirm the district court's decision on the grandfather provision, and reverse on the SSP claim. On the primary issue, the proper interpretation of 42 U.S.C. Sec. 1382(h), we reach the same result as did the Third Circuit in Liberty Alliance of the Blind v. Califano, 568 F.2d 333 (3d Cir.1977). On the second issue we agree with the decision in Bouchard v. Secretary of Health and Human Services, 583 F.Supp. 944 (D.Mass.1984).
 
 
 4
 I. THE GRANDFATHER PROVISION: SECTION 1611(h) OF THE SOCIAL
 
 SECURITY AMENDMENTS OF 1972
 A. Statutory Background
 
 5
 The SSI program, adopted on January 1, 1974, is the most recent major amendment relating to aid to the blind of the Social Security Act of 1935, Pub.L. No. 74-271, ch. 531, tit. X, 49 Stat. 645. Under the original 1935 Social Security Act scheme, the federal government assisted state aid programs for poor families, the blind, aged and disabled through provision of matching funds for state programs meeting federal requirements. See generally A. LaFrance, M. Schroeder, R. Bennett, W. Lloyd, Law of the Poor 261-66 (1973). In the 1950 amendments to the Social Security Act, Pub.L. No. 81-734, ch. 809, Secs. 341 and 344, 64 Stat. 553-54, Congress created special rules for the needy blind, which required states to exempt a certain amount of blind persons' earnings in calculating their benefits. These provisions were to encourage blind persons to become self-supporting while receiving benefits to help meet their special needs. See Liberty Alliance, 568 F.2d at 336-37 (quoting S.Rep. No. 1669, 81st Cong., 2d Sess., reprinted in 1950 U.S.Code Cong.Serv. 3287, 3345-46). By 1972, some state programs of aid to the blind contained more generous income exclusion provisions than those required by the federal government. Pennsylvania's program, the subject of the Liberty Alliance litigation, was one. California's was another.
 
 
 6
 The Social Security Amendments of 1972, Pub.L. No. 92-603, 86 Stat. 1465 (codified as amended at 42 U.S.C. Secs. 1381-1385 (1976 & Supp. V 1981)), combined aid to the blind, elderly and disabled in one federally administered and funded system: the Supplemental Security Income program. SSI increased the level of uniformity in eligibility standards and calculation of benefits, but gave states the option of supplementing the federal benefits. See H.R.Rep. No. 231, 92d Cong., 2d Sess. 4-5, reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 4992 (hereinafter cited as H.R.Rep. No. 231).
 
 
 7
 Two sections of the new SSI program expressly addressed the question of setting the level of SSI benefits for blind persons who had received aid from more generous state plans prior to the enactment of SSI. One section, 1611(g), 42 U.S.C. Sec. 1382(g), permitted recipients to have a greater amount of independent financial resources than did the new federal plan. That section deemed these recipients to fall within the federal limits for owned resources, if the amount did not exceed the maximum allowable under the former state plan.[1]
 
 
 8
 The other section, 1611(h), 42 U.S.C. Sec. 1382(h), concerned the calculation of income the government would not include when it determined the recipient's income. For persons who had received state aid to the blind prior to SSI and met certain other requirements,[2] section 1611(h) permitted disregarding the amount that would have been disregarded under the old state plan if it was greater than the amount that would be disregarded under the new federal plan:
 
 
 9
 there shall be disregarded an amount equal to the greater of (A) the maximum amount of any earned or unearned income which could have been disregarded under the State plan, as in effect for October 1972, under which he or they received such aid or assistance for December 1973, and (B) the amount which would be required to be disregarded under section 1382a of this title [the federal income test] without application of this subsection.
 
 
 10
 42 U.S.C. Sec. 1382(h) (Sec. 1611(h) of the Social Security Amendments of 1972).
 
 
 11
 The dispute between the parties in this case is over HHS's interpretation of section 1611(h). Plaintiffs argue that Congress intended the section to prevent the new law from diminishing the amount blind beneficiaries were receiving under prior law. They argue that Congress did so by requiring state rules to be used in SSI benefit calculation if they would lead to a more generous result for prior recipients who now applied for SSI. The statute, according to plaintiffs, "grandfathers" in all earlier more generous income counting rules from prior state aid to the blind programs for those who had received benefits under them.
 
 
 12
 That is not the way that HHS is administering the program, however. Prior to the passage of SSI, the agency had promulgated regulations prescribing income counting procedures for states in the matching program, 45 C.F.R. Sec. 233.20(a)(4)-(11) (1972). The government argues that Congress intended section 1611(h) to grandfather only those particular income exclusions recognized in the preexisting regulations. Congress, it is argued, intended section 1611(h) to create an alternative uniform counting system.
 
 B. Discussion
 
 13
 Plaintiffs here challenge the agency on the same grounds and seek the same relief that Pennsylvania blind plaintiffs obtained from the Third Circuit in Liberty Alliance of the Blind v. Califano, 568 F.2d 333 (3d Cir.1977). The government there agreed, as it agrees here, that section 1611(g), relating to resources, was intended to grandfather in all state resource counting rules for those who had been receiving aid under prior, more liberal state plans. It unsuccessfully argued, however, that the income counting provision of section 1611(h) was different. The government in Liberty Alliance asserted that the preexisting federal regulations, not state counting rules, were to be the alternative to the new SSI test. 568 F.2d at 339.
 
 
 14
 The Third Circuit disagreed with the government and concluded that the two sections were both "patently aimed at the same problem--a state plan which was more generous in disregarding resources and income than the succeeding federal plan." 568 F.2d at 340. The court decided that the two sections must be read together to create a comprehensive savings clause, grandfathering into SSI the entire state plan provision for both exclusion of resources and exclusion of income of blind persons. Id.
 
 
 15
 The Secretary in this case presents a slightly different defense of its position. It argues here that one word in section 1611(h)--the word "disregarded"--gives that section a very different purpose from section 1611(g). According to the Secretary, because the 1972 (pre-SSI) federal regulations, describing procedures for states to use in counting income benefits under the federal-state matching program, 45 C.F.R. Sec. 233.20 (1972), contained several sections with headings describing income categories to be "disregarded," 45 C.F.R. Sec. 233.20(a)(4)-(11) (1972), Congress in essence incorporated by reference those categories, and only those categories, as types of income to be excluded in calculation of SSI benefits for former state aid recipients.[3] The Secretary thus asks us to apply the term "disregard" as a very narrow term of art.
 
 
 16
 History does not confirm the government's theory. At the time the Social Security amendments were drafted, the term "disregard" was used widely in the context of Social Security income counting as a synonym for words and phrases like "exclusion," "deduction," and "not included." None of the authorities cited to us, nor any we have unearthed, support the Secretary's position that "disregard" had a more restrictive meaning. We can find no evidence that there existed, as agency counsel argued orally, a "strict category of rules known as income disregard rules," encompassed in 45 C.F.R. Sec. 233.20(a)(4)-(11) (1972). Agency counsel admitted at oral argument that the word "disregard" was never "coherently defined," and we agree.
 
 
 17
 Indeed, the federal income exclusions listed in the SSI statute itself, 42 U.S.C. Sec. 1382a, are not described as "disregards," although some are identical to items HHS points to in its regulations as "disregards." Nor does use of the word "disregard" in the legislative history of SSI support the Secretary's contention that it was subject to limited, specialized usage. A report by the House of Representatives on the proposed SSI program explains that the first $85 of earned income per month "would be excluded from consideration." H.R.Rep. No. 231 at 151, reprinted in 1972 U.S.Code Cong. & Ad.News at 5137. It did not say that income was to be "disregarded." A Congressional study of SSI after passage of the amendments but before implementation defined countable income as "income other than allowable exclusions"--not allowable "disregards." Staff of the Subcommittee on Fiscal Policy of the Joint Economic Committee, 93d Cong., 1st Sess., The New Supplemental Security Income Program--Impact on Current Benefits and Unresolved Issues 45 (Joint Comm. Print. 1973). In the section of the study concerning income limits and benefit levels, the words "exclusion" and "disregard" are used interchangeably. Id. at 48-51.
 
 
 18
 The interchangeable nature of the terms is illustrated in state usage as well. The Eligibility and Assistance Manual (EAS) of the California Department of Social Welfare Sec. 44, which included in 1972 all of the income counting rules of the California Aid to the Blind program, including those now considered to be "disregards" by the Secretary, identified amounts left out of the income calculations as "exclusions."
 
 
 19
 Finally, the Secretary's own list of the items the agency considers "disregards" among the California exclusions does not conform to the definition of the word "disregard" we are asked to accept. The Secretary recognizes sixteen California income exclusions as having been grandfathered into SSI income calculation via section 1611(h). Social Security Administration, Program Operations Manual System (POMS) Sec. SI 00840.360. A number of those, however, are not found in 45 C.F.R. Sec. 233.20(a)(4)-(11) (1972), the "disregard" section which the Secretary asserts contains all the categories of income Congress intended to be considered excluded.
 
 
 20
 For example, the Secretary allows the California category of "loans and grants." This category did not appear in the prior regulations as a "disregard," rather it appeared at 45 C.F.R. Sec. 233.20(a)(3)(iv) (1972), which stated that "in determining the availability of income and resources, [loans and grants] will not be included as income." The California exclusion of home produce of a recipient consumed in his or her household also appeared in the federal regulations as an amount "not included as income." 45 C.F.R. Sec. 233.20(a)(3)(iv)(c) (1972). California excluded "all earnings of children under 14 years of age." The corresponding federal regulation, 45 C.F.R. Sec. 233.20(a)(3)(iii), provided only that "no inquiry will be made of the amount of earnings of a child under 14 years of age." Thus, the agency in fact grandfathers California income exclusions that are not included in regulations the Secretary insists are the only source of "disregards." The agency's own practice contradicts the Secretary's position on the highly technical use of "disregard."
 
 
 21
 The legislative history of SSI shows that the purpose of the grandfather provisions was to avoid causing hardship to the blind under the new program. In a 1973 hearing before the Senate Committee on Finance, Senator Russell Long, Chairman of the Committee, expressed concern that some welfare recipients would lose their benefits under the new program. Caspar Weinberger, then Secretary of the Department of Health, Education, and Welfare, responded that "[t]he conferees did specifically grandfather the blind and the disabled recipients into the SSI program ...." Supplemental Security Income Program: Hearing Before the Senate Committee on Finance, 93d Cong., 1st Sess. 9 (1973). An earlier Congressional summary of the program voiced the same concerns:
 
 
 22
 as under present law, any income necessary for the fulfillment of the plan for achieving self-support would be disregarded for persons qualifying on the basis of blindness. A savings clause would assure that blind persons would not receive any reduction in benefits due to those provisions.
 
 
 23
 Senate Finance Committee and House Committee on Ways and Means, Summary of Social Security Amendments of 1972 as Approved by the Conferees 27 (Comm.Print.1972), quoted in Liberty Alliance, 568 F.2d at 340. The Secretary's position here has resulted in a reduction of benefits. It is therefore contrary to the statute.
 
 
 24
 In both Liberty Alliance and this case, the Secretary has pointed to an uncodified statute, Title II, section 212, of Pub.L. No. 93-66, as support for its argument that Congress did not intend the grandfathering provisions of 42 U.S.C. Secs. 1382(g) and 1382(h) to guarantee that the blind would suffer no reductions in their benefits when the state programs were converted to SSI.[4] Section 212 "appears to condition a state's eligibility for federal assistance in some programs on the state's implementation of a supplementary payments plan." Liberty Alliance, 568 F.2d at 340. The Secretary maintains that Public Law 93-66 was passed to avoid hardship to grandfathered-in recipients of aid to the blind, aged and disabled, and, therefore, that section 1611(h) cannot be read to do the same thing.
 
 
 25
 As the Liberty Alliance court pointed out, however, the Secretary's argument misconstrues the aims of sections 212 and 1611(h). Section 212 was drafted after the passage date of the Act to ensure that no pre-SSI recipient would receive a smaller benefit when SSI came into effect. See Supplemental Security Income Program: Hearing Before the Senate Committee on Finance, 93d Cong., 1st Sess. 7-14 (1973). This is very different from the promise of sections 1611(g) and 1611(h), limited to blind recipients, that there would be a carryover of certain calculation methods for those who had been receiving benefits under a more generous system of calculation.
 
 
 26
 The only other basis the Secretary offers for upholding the regulations is the general principle that this court should defer to the agency's interpretation of the statute at issue. Although under this long-established rule courts show "great deference to the interpretation given the statute by the officers or agency charged with its administration," Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), this rule has never required the court to abdicate its own role in deciding in questions of statutory interpretation. Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). Agency interpretations of statutes are important, but they are not controlling in a court's decision. Batterton v. Francis, 432 U.S. 416, 424, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). It is beyond doubt that the Social Security Administration possesses expertise in a very complicated area of administrative law. Nevertheless, as this court has recognized, "we are obliged to reject the agency's interpretation of the statute ... if 'there are compelling indications that it is wrong.' " Cruz v. Zapata Ocean Resources, Inc., 695 F.2d 428 (9th Cir.1982) (quoting Red Lion Broadcasting Co. v. Federal Communications Commission, 95 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969)).
 
 
 27
 The Secretary here has shown no basis for her interpretation of the statute. Neither the language of the statute nor its legislative history, nor for that matter the agency's own practice, supports the argument that the word "disregard" in section 1611(h) is a term of art with a well-defined narrow meaning. The agency has not interpreted section 1611(h)--it has attempted to rewrite it. Such an objective cannot be tolerated in the name of deference to agency expertise. Therefore, we affirm the district court on the interpretation of section 1611(h).
 
 C. Remedy
 
 28
 The district court ordered recalculation of benefits erroneously calculated as well as prospective implementation of the correct formula. The Secretary contends on appeal that the sovereign immunity of the United States precludes any relief other than prospective relief. This is incorrect. 42 U.S.C. Sec. 405(g), the section of the Social Security Act authorizing judicial review, is a broad waiver of sovereign immunity which authorizes injunctive and other relief. See Califano v. Yamasaki, 442 U.S. 682, 705, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979); Cash v. Califano, 621 F.2d 626, 632 (4th Cir.1980); Wright v. Califano, 603 F.2d 666, 670 (7th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); Liberty Alliance, 568 F.2d at 343-47.
 
 
 29
 The Secretary also has questioned jurisdiction over the class in this case, since not all unnamed class members have met the requirement in section 405(g) of exhausting administrative remedies prior to suit. The question was explored thoroughly by the Third Circuit in Liberty Alliance, and we follow that court's reasoning. This is a question of statutory interpretation in which the Secretary has taken a final position on an issue, and further administrative appeals would be futile. Mathews v. Eldridge, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976). Compare Heckler v. Ringer, --- U.S. ----, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (Secretary's nonbinding instruction did not render administrative exhaustion futile). Moreover, as the Liberty Alliance court pointed out, "[r]esolution of the issue in a single judicial review proceeding conserves both administrative and judicial resources."
 
 
 30
 II. SPOUSAL DEEMING IN THE STATE SUPPLEMENTAL BENEFITS PROGRAM
 
 
 31
 Some members of the plaintiff class are themselves eligible for SSI benefits but are married to individuals who are not eligible. Those class members, in addition to challenging the SSI calculations discussed in Part I, also challenge the Secretary's administration of the State Supplemental Program (SSP), 42 U.S.C. Sec. 1382e, as it relates to recipients in their situation.
 
 
 32
 The State Supplemental Program is an optional program which Congress enacted as part of the 1972 Social Security Amendments to permit states to provide benefits in addition to SSI benefits. Pub.L. No. 92-603, Title III, Sec. 301, 86 Stat. 1474 (1972) (codified as amended at 42 U.S.C. Sec. 1382e (1976 & Supp. V 1981)). See H.R.Rep. No. 231 at 199, reprinted in 1972 U.S.Code Cong. & Ad.News at 5185. The statute provides that a state may allocate funds for supplementary assistance and contract with the federal government to administer the program. 42 U.S.C. Sec. 1382e. Eligible persons receive a single check each month, including the SSI and SSP benefits, and the state reimburses the federal government for the state portion of the check. 42 U.S.C. Sec. 1382e(d). Under this program, therefore, the states decide whether and how much to supplement the federal benefit, but the federal government administers the program.
 
 
 33
 For purposes of this appeal, the basic method the Secretary uses for calculation of the SSI and SSP benefits may be described as follows. The named plaintiff, Karen Conant, is eligible for SSI, but her husband is ineligible. The federal regulations applicable to this "mixed couple" require the Secretary to calculate the countable income of the ineligible spouse and combine it with the countable income of the eligible spouse. This is called "spousal deeming" and is used to determine both the federal (SSI) and the state (SSP) benefit. 20 C.F.R. Sec. 416.2025(b)(1). The amount of each benefit that the recipient actually receives is the difference between the combined countable income and the relevant benefit rate.
 
 
 34
 At this point, however, the Secretary's practices with respect to SSI and SSP for mixed couples diverge. For SSI benefits, the federal regulations require that the combined income be subtracted from the federal benefit rate for eligible couples--those in which both husband and wife are eligible for benefits. 20 C.F.R. Secs. 416.1163(c), 416.2025(b)(1). For the SSP benefit, however, the Secretary has chosen to subtract the combined countable income of both husband and wife from the state benefit rate for eligible individuals, as opposed to eligible couples. Social Security Administration, POMS Sec. SI 00850.220.[5] The SSP benefit to the recipient is thus smaller than it would be if the eligible couple rate were used. The plaintiffs therefore argue that the Secretary should apply the base SSP rate for eligible couples rather than eligible individuals when calculating SSP for mixed couples.
 
 
 35
 The Secretary's response is based upon agency regulations that permit the states to choose among nine different benefit rates for persons in up to nine categories including five different "living arrangements."[6] The State of California has not chosen to recognize a "mixed couple" living arrangement. It has chosen to recognize only eligible individuals and eligible couples. Cal. Welf. & Inst. Code Sec. 12200 (Cum.Supp.1984). Its categories relevant to this litigation thus parallel the federal categories.
 
 
 36
 The Secretary urges us to hold that because the state has not chosen the "mixed couple" category, the Secretary is required to apply the rate for eligible individuals as opposed to the rate for eligible couples. The Secretary offers no explanation, however, for why the agency has no discretion in deciding which category to use or for why the rate for individuals is more appropriate than the rate for couples. In the legislative history of SSP Congress indicated that the same method of calculation was to be used in determining both SSP and SSI benefits. H.R.Rep. No. 231 at 199-201, reprinted in 1972 U.S.Code Cong. & Ad.News at 5185-87. Yet the agency's use of the rate for individuals in calculating SSP benefits is inconsistent with its practice in calculating SSI benefits. In calculating SSI, a "mixed couple" is treated as an eligible couple. 20 C.F.R. Secs. 416.1163(c), 416.2025(b)(1). The agency's SSP practice is also inconsistent with HHS's own regulation that, in the absence of any specific contrary regulation, the agency follow the same deeming rules when calculating SSP as it does when calculating SSI. 20 C.F.R. Sec. 416.2005(d).[7] The challenged practice, as described in the agency's operations manual, POMS Sec. SI 00850.220, is authorized by no regulation and contrary to its SSI deeming rules.
 
 
 37
 The government's reply brief contains an allusion to an "agreement" which the dissenting opinion states this opinion "sets aside." We have searched in vain in this record for any agreement which prescribes a California SSP practice inconsistent with federal SSI practice. The government has not provided any supporting citation.
 
 
 38
 We therefore conclude that the Secretary has failed to follow the agency's own regulations and has acted in a manner contrary to the legislative intent that SSP and SSI be uniformly, consistently and efficiently administered. See 42 U.S.C. Sec. 1382e(b); H.R.Rep. No. 231 at 199-201, reprinted in 1972 U.S.Code Cong. & Ad.News at 5185-87. Our conclusion is in accord with the district court's decision in Bouchard v. Secretary of Health & Human Services, 583 F.Supp. 944 (D.Mass.1984), in which the court observed that "the Secretary has underestimated her authority and her obligations under the Social Security Act." Bouchard, at 953. As we noted in our holding on the first issue in this case, while the agency practice is entitled to deference, courts are "not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with the statutory mandate or that frustrate a congressional policy underlying a statute." Volkswagenwerk, 390 U.S. at 272, 88 S.Ct. at 935 (quoting National Labor Relations Board v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965)). Moreover, we must overturn the agency practice if it is "plainly erroneous or inconsistent with the regulation," as we also have found. Bouchard, at 953 (citing Tallman, 380 U.S. at 16-17, 85 S.Ct. at 801-802).
 
 
 39
 Our holding that the Secretary should apply the "eligible couple" benefit rate is limited to California, where the only available relevant living arrangement categories are "eligible individuals" and "eligible couples." We express no opinion with respect to the appropriate rate levels in states that have chosen different living arrangement categories under 20 C.F.R. Sec. 416.2030(a)(2).
 
 
 40
 The judgment of the district court with respect to section 1611(h) of the Social Security Amendments of 1972, 42 U.S.C. Sec. 1382(h), is affirmed. The judgment with respect to spousal deeming under section 301 of the Amendments, 42 U.S.C. Sec. 1382e, is reversed with instructions to the district court to consider remaining issues related to class certification and remedy.
 
 SNEED, Circuit Judge, dissenting:
 
 41
 I respectfully dissent. I do so without strong conviction concerning the proper meaning of section 1611(h), 42 U.S.C. Sec. 1382(h). To hold such a conviction appears to be impossible in light of the applicable legislative history.
 
 
 42
 What does appear obvious to me, however, is that prior to 1972 the state programs of aid to the blind did not provide a uniform system of exclusions from gross income, that Congress in enacting in 1972 the Social Security Amendments of 1972 did not intend to reduce the level of benefits received by the blind, that the plaintiffs and government differ as to the manner in which this objective is to be accomplished, and that neither the plain language of section 1611(h) nor the accompanying legislative history unambiguously indicates which is correct. No doubt the majority accepts all these propositions save the last.
 
 
 43
 I could lengthen this dissent by pointing out precisely why I hold section 1611(h) to be ambiguous. It is unnecessary, however. Suffice it to say, I agree that the term "disregards" appears not to have possessed the precision that the government insists it had at the time of the enactment of 1611(h), but I also believe that the government spoke the truth when it asserted in its brief that prior to this suit the plaintiffs were already receiving their pre-1972 level of benefits by reason of section 212 of Pub.L. No. 93-66, 87 Stat. 152, 155-58 (1973). See Brief of Defendant-Appellant-Cross-Appellee at 6, 7. These two perceptions leave me no alternative but to conclude the statute is ambiguous. Under these conditions my duty is to defer to the administrative agency. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., --- U.S. ----, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984); Hayfield Northern Railroad Co. v. Chicago & North Western Transportation Co., --- U.S. ----, 104 S.Ct. 2610, 2618, 81 L.Ed.2d 527 (1984); Aluminum Co. of America v. Central Lincoln Peoples' Utility District, --- U.S. ----, 104 S.Ct. 2472, 2479-80, 81 L.Ed.2d 301 (1984).
 
 
 44
 Intervention under the circumstances of this case contributes to the dilution of the responsibility of those branches of government directly responsible for the design and administration of the social security system. The achievement in this case and in others like it of what we perceive to be justice carries a high price. In addition to the dilution of which I speak, it also impairs our legitimacy when we command the executive and legislative branches of government to respect the doctrine of separation of powers. We should abide by that to which we command others to adhere.
 
 
 45
 These observations are even more relevant with respect to the state supplemental program (SSP). To me it is clear that the Secretary is correct as to this issue. As to it the majority sets aside an agreement between the State of California and the Department of Health and Human Services prescribing the manner in which the SSP benefit is to be computed. As a result the SSP benefit is made larger and California must pay more. The majority asserts the Secretary offered no explanation for its choice of the challenged method of computation. This is not so. The explanation is that fundamentally SSP benefits are the responsibility of the state and California has chosen to calculate the amount of its benefit in the challenged manner. This manner is not inconsistent with the intent of Congress. See H.R.Rep. No. 231, 92d Cong., 1st Sess. 199 (1981), reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5185 (each state retains complete freedom to supplement federal payments "to whatever extent it finds appropriate"); H.R.Rep. No. 627, 93d Cong., 1st Sess. 9 (1973).
 
 
 46
 Finally, the decision in Bouchard v. Secretary of Health & Human Services, 583 F.Supp. 944 (D.Mass.1984), is distinguishable on the ground that the Massachusetts SSP program authorizes what the California program does not. That is, under the Massachusetts program the category of recipient "living with an ineligible spouse" is included in the same category as a recipient "living ... with an eligible spouse." See 583 F.Supp. at 948. As a result the recipient would be entitled to the SSP benefit calculation sought here. In the California SSP program, however, the recipient "living with an ineligible person" is not so treated. Under these circumstances the Secretary not only is not required to calculate, but is precluded from calculating, the SSP benefits as it does the SSI benefits.
 
 
 47
 Therefore, I would reverse the district court with respect to the section 1611(h) issue and affirm it with respect to the spousal deeming issue.
 
 
 
 *
 Margaret Heckler has been substituted for Richard Schweiker pursuant to Fed.R.App. P. 43
 
 
 **
 Honorable M.D. Crocker, Senior United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 Section 1611(g) states:
 (g) Individuals deemed to meet resources test
 In the case of any individual or any individual and his spouse (as the case may be) who--
 (1) received aid or assistance for December 1973 under a plan of a State approved under subchapter I, X, XIV, or XVI of this chapter,
 (2) has, since December 31, 1973, continuously resided in the State under the plan of which he or they received such aid or assistance for December 1973, and
 (3) has, since December 31, 1973, continuously been (except for periods not in excess of six consecutive months) an eligible individual or eligible spouse with respect to whom supplemental security income benefits are payable,
 the resources of such individual or such individual and his spouse (as the case may be) shall be deemed not to exceed the amount specified in subsections (a)(1)(B) and (a)(2)(B) of this section during any period that the resources of such individual or individuals and his spouse (as the case may be) does not exceed the maximum amount of resources specified in the State plan, as in effect for October 1972, under which he or they received such aid or assistance for December 1973.
 
 
 [2]
 Section 1611(h) provides:
 (h) Individuals deemed to meet income test
 In determining eligibility for, and the amount of, benefits payable under this section in the case of any individual or any individual and his spouse (as the case may be) who--
 (1) received aid or assistance for December 1973 under a plan of a State approved under subchapter X or XVI of this chapter,
 (2) is blind under the definition of that term in the plan, as in effect for October 1972, under which he or they received such aid or assistance for December 1973,
 (3) has, since December 31, 1973, continuously resided in the State under the plan of which he or they received such aid or assistance for December 1973, and
 (4) has, since December 21, 1973, continuously been (except for periods not in excess of six consecutive months) an eligible individual or an eligible spouse with respect to whom supplemental security income benefits are payable,
 there shall be disregarded an amount equal to the greater of (A) the maximum amount of any earned or unearned income which could have been disregarded under the State plan, as in effect for October 1972, under which he or they received such aid or assistance for December 1973, and (B) the amount which would be required to be disregarded under section 1382a of this title without application of this subsection.
 42 U.S.C. Sec. 1382(h).
 
 
 [3]
 The sections of 45 C.F.R. Sec. 233.20 (1972) that the Secretary insists are the referent of "disregard" in the statute are the following:
 (4) Disregard of income common to OAA, AFDC, AB, APTD, or AABD. (i) If the State chooses to disregard income from all sources before applying other provisions for disregarding or setting aside income, specify the amount that is first to be disregarded, but not more than $7.50 ($5 in AFDC) per month, of any income of an individual, child or relative claiming assistance. All income must be included such as social security or other benefits, earnings, contributions from relatives, or other income the individual may have.
 (ii) Provide that, in determining need and the amount of the assistance payment, the following will be disregarded as income and resources:
 (a) The value of the coupon allotment under the Food Stamp Act of 1964 in excess of the amount paid for the coupons;
 (b) The value of the U.S. Department of Agriculture donated foods (surplus commodities);
 (c) Any payment received under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970;
 (d) Any grant or loan to any undergraduate student for educational purposes made or insured under any programs administered by the Commissioner of Education;
 (e) Any per capita judgment funds paid under Public Law 92-254 to members of the Blackfeet Tribe of the Blackfeet Indian Reservation, Montana and the Gros Ventre Tribe of the Fort Belknap Reservation, Montana.
 (f) Any benefits received under Title VII, Nutrition Program for the Elderly, of the Older Americans Act of 1965, as amended; and
 (g) Any compensation provided to individual volunteers under the Retired Senior Volunteer Program and the Foster Grandparent Program and Older Americans Community Service Programs established under the Title VI of the Older Americans Act of 1965, as amended.
 (iii) Provide that income and resources which are disregarded or set aside under this part will not be taken into consideration in determining the need of any other individual for assistance.
 (5) Disregard of income applicable to OAA, AB, APTD, or AABD. Provide that, in determining need and amount of assistance, (i) with respect to payments made to or on behalf of an individual or to or on behalf of another person, for any month, under title I or II of the Economic Opportunity Act of 1964 or under any program asisted (sic) under such title, (a) the first $85 plus one-half of the excess over $85 will be disregarded and (b) any excess over such amount will be taken into consideration in determining the need of any other individual for assistance only to the extent they are made available to or for such other individual (effective July 1, 1969), not applicable; for this purpose payments under title I or II of the Economic Opportunity Act are described in CA Memo 23-A, dated August 26, 1966, issued by the Office of Economic Opportunity; and (ii) training incentive payments and expense allowances made to an individual or to any other person under the Manpower Development and Training Act of 1962, as amended, will be disregarded.
 (6) Disregard of earned income; definition. Provide that for purposes of disregarding earned income the agency policies will include: (i) A definition of "earned income" in accordance with the provisions of subdivisions (iii) through (viii) of this subparagraph; and
 (ii) Provision for disregarding earned income for the period during which it is earned, rather than when it is paid, in cases of lump-sum payment for services rendered over a period of more than 1 month.
 (iii) The term "earned income" encompasses income in cash or in kind earned by a needy individual through the receipt of wages, salary, commissions, or profit from activities in which he is engaged as a self-employed individual or as an employee. Such earned income may be derived from his own employment, such as a business enterprise, or farming; or derived from wages or salary received as an employee. It includes earnings over a period of time for which settlement is made at one given time, as in the instance of sale of farm crops, livestock, or poultry. In considering income from farm operation, the option available for reporting under OASDI, namely the "cash receipts and disbursements" method, i.e., a record of actual gross, of expenses, and of net, is an individual determination and is acceptable also for public assistance.
 (iv) With reference to commissions, wages, or salary, the term "earned income" means the total amount, irrespective of personal expenses, such as income-tax deductions, lunches, and transportation to and from work, and irrespective of expenses of employment which are not personal, such as the cost of tools, materials, special uniforms, or transportation to call on customers.
 (v) With respect to self-employment, the term "earned income" means the total profit from business enterprise, farming, etc., resulting from a comparison of the gross income received with the "business expenses," i.e., total cost of the production of the income. Personal expenses, such as income-tax payments, lunches, and transportation to and from work, are not classified as business expenses.
 (vi) The definition shall exclude the following from "earned income": Returns from capital investment with respect to which the individual is not himself actively engaged, as in a business (for example, under most circumstances, dividends and interest would be excluded from "earned income"); benefits (not in the nature of wages, salary, or profit) accruing as compensation, or reward for service, or as compensation for lack of employment (for example, pensions and benefits, such as United Mine Workers' benefits or veterans' benefits).
 (vii) With regard to the degree of activity, earned income is income produced as a result of the performance of services by a recipient; in other words, income which the individual earns by his own efforts, including managerial responsibilities, would be properly classified as earned income, such as management of capital investment in real estate. Conversely, for example, in the instance of capital investment wherein the individual carries no specific responsibility, such as where rental properties are in the hands of rental agencies and the check is forwarded to the recipient, the income would not be classified as earned income.
 (viii) Reserves accumulated from earnings are given no different treatment than reserves accumulated from any other sources.
 (7) Disregard of earned income; method. (i) Provide that the following method will be used for disregarding earned income: The applicable amounts of earned income to be disregarded will be deducted from the gross amount of "earned income," and all work expenses, personal and non-personal, will then be deducted. Only the net amount remaining will be applied in determining need and the amount of the assistance payment.
 (ii) In applying the disregard of income under subparagraph (11)(ii)(b) of this paragraph to an applicant for AFDC, there will be a preliminary step to determine whether there is eligibility without the application of any AFDC provisions for the disregard or setting aside of income. If such elegibility (sic) exists, the next step is to determine need and the amount of assistance by disregarding income and deducting work expenses in accordance with the method described in subdivision (i) of this subparagraph.
 (8) Disregard of earned income applicable only to OAA, APTD, or AABD. If the State chooses to disregard earned income, specify the amount to be disregarded of the first $80 per month of income that is earned by an aged or disabled individual claiming OAA, APTD, or AABD, who is not blind, but not more than $20 per month plus one-half of the next $60 of such earned income.
 (9) Disregard of income and resources applicable only to APTD or AABD. If the State chooses to disregard income (which may be additional to the income disregarded under subparagraph (8) of this paragraph) or resources for a disabled individual to achieve the fulfillment of a plan of self-support, provide that the amounts of additional income and resources will not exceed those found necessary for the period during which the individual is actually undergoing vocational rehabilitation, and specify the period, not in excess of 36 months, for which such amounts are to be disregarded.
 (10) Disregard of income and resources applicable only to AB or AABD. Provide that, in determining the need of individuals who are blind, (i) the first $85 per month of earned income of the individual plus one-half of earned income in excess of $85 per month will be disregarded; and (ii) if the individual has a plan for achieving self-support, such additional income and resources as are necessary to fulfill such plan will be disregarded for a period not in excess of 12 months. Such additional income and resources may be disregarded for an additional period not in excess of 24 months (for a total of 36 months), as specified in the State plan.
 (11) Disregard of income applicable only to AFDC. (i) Provide for the disregard of the $30 monthly incentive payment made by the manpower agency to any participant in institutional and work experience training under the WIN program.
 (ii) Provide for the disregard of:
 (a) All of the earned income of any child receiving AFDC if the child is a full-time student or is a part-time student who is not a full-time employee. A student is one who is attending a school, college, or university or a course of vocational or technical training designed to fit him for gainful employment and includes a participant in the Job Corps program under the Economic Opportunity Act of 1964. A full-time student must have a school schedule that is equal to at least one-half of a full-time curriculum; and
 (b) The first $30 of the total of earned income for a month of all other individuals whose needs are included in the family grant, plus one-third of the remainder of their earned income for the month; except that (1) the State agency will not disregard earned income for a month of any one of the persons in a family as provided in (b) of this subdivision if such a person (i) terminated his employment or reduced his earned income without good cause within the period of 30 days preceding such month; or (ii) refused without good cause within the period of 30 days preceding such month to accept employment in which he is able to engage which is offered through the public employment offices of the State, or is otherwise offered by an employer if the offer of such employer is determined by the State or local agency administering the State plan, after notification by him, to be a bona fide offer of employment; and (2) the State agency will not disregard earned income for a month of the persons in a family as provided in (b) of this subdivision if the total income of such persons for such month exceeds their need as determined without application of any provisions for disregarding or setting aside of income unless for any one of the four preceding months their needs were met in whole or in part by an AFDC payment.
 (iii) If any portion of an AFDC family's income is to be conserved for the future identifiable needs of a child, specify the needs and amounts and type of income to be conserved and provide that such amount will be reasonable for the purpose for which it is being conserved.
 (iv) Earned income, for purposes of disregarding the first $30 plus one-third of the remainder of monthly earnings, pursuant to subdivision (ii)(b) of this subparagraph, includes work allowances and training incentive payments under the MDTA, payments under the Economic Opportunity Act of 1964, including payments to the beneficiaries of assistance under the act, and earnings under title I of the Elementary and Secondary Education Act. The $30 plus one-third disregard does not apply to income from public service employment under WIN nor to incentive payments or reimbursement of training-related expenses made by the manpower agency to any participant in institutional and work experience training under WIN.
 (v) In summary, the effect of these regulations, for treatment of income and expenses under WIN, is as follows:
 (a) For earned income from regular employment or on-the-job training, pursuant to section 432(b)(1) of the Act, the first $30 plus one-third of the remainder are disregarded, and work related expenses are then deducted from the remaining income;
 (b) For institutional and work experience training, pursuant to section 432(b)(2) of the Act, the $30 monthly incentive payment and the reimbursement for training related expenses made by the manpower agency are totally disregarded; and
 (c) For public service employment, pursuant to section 432(b)(3) of the Act, work related expenses are deducted, but the $30 plus one-third disregarded does not apply.
 
 
 [4]
 The Third Circuit called section 212 of Pub.L. No. 93-66 "a model of obscurity." Liberty Alliance, 568 F.2d at 340. Section 212 is quoted in full in that opinion. Id. n. 11
 
 
 [5]
 Section SI 00850.220 of the Social Security Administration's Program Operations Manual states:
 The fact that a couple computation is used to determine the Federal payment should not affect the appropriate State standard. For example if a State has one standard for an individual in a deeming situation and another for a couple it would still be appropriate to use the individual standard even though a couple standard is used for the Federal portion of the benefit.
 
 
 [6]
 The nine categories selected are: eligible couples consisting of various combinations of aged, blind, and disabled individuals, 20 C.F.R. Sec. 416.2020(d)(2)-(3); living alone, living with an ineligible spouse, living in a personal care facility, or living in a domiciliary or congregate care facility, 20 C.F.R. Sec. 416.2030(a)(2)
 
 
 [7]
 20 C.F.R. Sec. 416.2005(d) is a general provision for parallel administration of SSI and SSP. It states in relevant part:
 The regulations in effect for the supplemental security income program shall be applicable in the Federal administration of State supplementary payments except as may otherwise be provided in this subpart as found by the Secretary to be necessary for the effective and efficient administration of both the basic Federal benefit and the State supplementary payment.
 
 
 [20]
 C.F.R. Sec. 416.2015(c) relates specifically to the requirement of parallel calculations for eligibility and amount of the federal and state benefits. It states:
 Where not inconsistent with the provisions of this subpart, eligibility for and the amount of the State supplementary payment will be determined pursuant to the provisions of Subparts A through Q of this part.